# EDGEWOOD LUMBER CO. v. HULL, et al.—

## 223 S. W. (2d) 210.

Middle Section.   July 2, 1949.

Petition for Certiorari denied by Supreme Court, October 7, 1949.

J. B. Reagan and A. R. Hogue, both of Jamestown, for appellants.

Case and Turner, of Jamestown, for appellee.

HOWELL, J. The bill in this case was filed in the Chancery Court of Fentress County by the Edgewood Lumber Company, a corporation, against H. M. Hull and his son, Chester Hull, a partnership doing business under the name of H. M. Hull and Son, for an accounting under the terms of a written contract by which the defendant had agreed to cut some timber and manufacture it into lumber, on a part of what was known as the "Evans Land" in Fentress County, and the complainants had agreed to pay a fixed price for the lumber manu-

factured by the defendants. The complainant had also agreed to advance certain sums of money to the defendants for the purchase of machinery and equipment. The original contract was entered into between the defendants and a firm known as Flautt and Markley, and the contract was afterwards assigned to the Edgewood Lumber Company. The original bill was amended so as to make E. J. Flautt and Rolland R. Markley, parties complainant, suing for the use and benefit of the Edgewood Lumber Company.

The bill alleged that the defendants had abandoned the contract and that the book accounts of the complainant showed a balance due it of $3,454.19, over and above all credits for lumber manufactured.

The bill prayed for a judgment for the balance due as shown by the complainant's book account, for damages for logs cut and left in the woods, for damages for not cutting all the timber agreed to be cut and for the sums expended by complainant in road building and fencing along the road.

The defendants filed an answer and cross-bill in which they denied the material allegations of the bill and prayed for a judgment against complainant for several items and for damages.

The case was heard in March 1948 by the Chancellor and a jury and resulted in a mistrial. It was again heard at the September Term of the Court by the Chancellor and a jury. At the close of all the proof the complainant moved Court to withdraw the issues from the jury and for a judgment in its favor for the balance due as shown by its books, stating through counsel in open Court that it would not insist on any of the other relief prayed for in the bill. The defendants then moved the

Court to dismiss the complainant's bill as there was no valid assignment of the contract by Flautt and Markley to the Edgewood Lumber Company and for other reasons.

The Chancellor then granted the motion of the complainant to take the case from the jury for the reason that the issue of the accounting should not be submitted to the jury and the complainant was not insisting upon the remaining issues raised by the original bill.

The Chancellor then held that the book account upon which the balance due was $3,454.19 sued for by the complainant was fully sustained by the proof, but should be credited by certain claims of the defendants amounting to $500 for cutting logs that were left in the woods, $150 for lumber sticks and $80 for logs cut and placed on skids to be trucked to Jamestown, in all $750. A judgment was entered against the defendants for the balance due of $2,724.19, and a lien was decreed in favor of complainant upon certain equipment purchased by the defendant with funds advanced by complainant.

The defendants by proper procedure have appealed to this Court and have assigned numerous errors.

It is insisted for the defendants that the Chancellor erred in admitting the statement of the account from the complainant's books in evidence. This account was admitted through the testimony of the bookkeeper who had made a great majority of the entries in his own handwriting in the books and the ledger sheets were removed from the ledger and filed as exhibits to his testimony. The bookkeeper explained the entries made before he became bookkeeper for complainant, by producing the canceled checks of the complainant and these checks were filed as exhibits. The defendants insist that the tally

sheets or tickets made by the lumber graders was the best evidence and should have been produced and that the lumber graders who measured the lumber and made the tickets or tally sheets should have testified as to their correctness. It does not appear that any specific items in the book accounts are questioned.

It is insisted for the complainant that this original entry book kept by the complainant from day to day and produced by the bookkeeper who made the entries and who filed the original ledger sheets and canceled checks, is competent evidence and was properly introduced.

■ ■ The rule of evidence raised by this insistence of the defendants is fully discussed in Vol. 20, American Jurisprudence, and in Section 1066 and on page 914 it is said:

"The general rule is that a book of accounts, whether sought to be introduced under the common law rule or under statutes regulating the reception of such books in evidence, and whether the entries therein were made by the party himself or by a bookkeeper employed for that purpose, is admissible only if it is the book of original entries or the first permanent record of the transaction or transactions in question. There has been some diversity of opinion as to what constitutes books of original entry within the meaning of this requirement. In many of the earlier decisions considerable strictness was exercised in reference to the books that might be considered as containing original entries. Some of them refused to admit a book of accounts made up from memoranda or information derived from an employee. Gradually, however, the notions of what constitute original entries have been modified so as to fit the growing necessities of new business conditions. Under the

modern methods of conducting business, the information relative to the transactions constituting the book accounts often must pass through various hands before being permanently recorded and some system of providing temporary memoranda preparatory to the permanent records is necessary in order to insure accuracy. It would be impracticable to preserve for any great length of time the tags, slips, or other tokens constituting such original memoranda and impossible, in view of the ever-changing army of employees, to obtain the testimony of the person who made the temporary memoranda or conducted the transaction. Hence, following the rule of necessity which originated the admissibility of books of account in evidence, the courts do not regard such temporary memoranda as the original entries, but look to the permanent records as such original entries, where properly verified. It is now well-established that the first permanent records of the transactions by the creditor are to be deemed the original entries, if made in the usual course of business and within a reasonably short time after the transactions themselves, although the items may have been first entered as a temporary assistance to the memory upon some slate, book, paper, or other substance. It is of no consequence what the material was on which the memoranda were made or the size or shape of it, as long as it was a mere minute, not intended to be preserved as evidence itself of the transaction, but to be used in preparation of such evidence. In such cases the books of account into which the entries have been transferred from the temporary means of record, and not the temporary records themselves, are the books of original entries.

"The character of a book as one of original entry is not affected by the mere fact that the temporary mem-

oranda were made by a person other than the one who kept the book offered in evidence. In other words, a book of account made up in the usual course of business from slips, reports, or memoranda, furnished by the employees who conducted the transactions, which constitutes the first permanent record of the transactions entered in it is a book or original entry and admissible in evidence as such.''

This matter was also referred to and passed upon by this Court in the case of Pigg v. Houston & Liggett, in 8 Tenn. App. 613, and beginning on page 627 in which Faw, P. J., said:

"Modern business conditions and methods demand, and for several decades have been receiving, at the hands of the courts, a relaxation of the former rigid rules which excluded well-nigh everything savoring of hearsay. 'Mercantile and Industrial life, producing, as they do, nearly all the transactions of men that come before the courts of law and equity, are essentially practical. That which is the final basis of action, of calculation, reliance, investigation, and general confidence in every business enterprise, may, safely, in general, be resorted to to prove the main fact. The courts need not discredit what the common experience of mankind relies upon.' 10 R. C. L., pp. 861-862.

"Professor Wigmore concludes a discussion of the subject of 'regular entries' as an exception to the hearsay rule, as follows:

" 'The conclusion is, then, that where an entry is made by one person in the regular course of business recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the

latter, there is no objection to receiving that entry under the present exception, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility of doing so. Why should not this conclusion be accepted by the courts? Such entries are dealt with in that way in the most important undertakings of mercantile and industrial ife. They are the ultimate basis of calculation, investment, and general confidence in every business enterprise; nor does the practical impossibility of obtaining constantly and permanently the verification of every employee affect the trust that is given to such books. It would seem that expedients which the entire commercial world recognizes as safe could be sanctioned, and not discredited by courts of justice. When it is a mere question of whether provisional confidence can be placed in a certain class of statements, there cannot profitably and sensibly be one rule for the business world and another for the court-room. The merchant and the manufacturer must not be turned away remediless because methods in which the entire community places a just confidence are a little difficult to reconcile with technical judicial scruples on the part of the same persons who as attorneys have already employed and relied upon the same methods. In short, courts must here cease to be pedantic and endeavor to be practical.' Wigmore on Evidence, Vol. 2, sec. 1530, pp. 1895-1896.

"The principle thus enunciated by Professor Wigmore is, in substance recognized as sound by our Supreme Court in the following cases: Graham v. [Fidelity Mut.] Life Association, 98 Tenn. 48, 54, 37 S. W. 995; Continental National Bank v. First National Bank, 108

Tenn. 374, 380, 68 S. W. 497, and Burns v. City of Nashville, 142 Tenn. 541, 610-611, 221 S. W. 828.

"In the last cited case, the court cited with approval Heike v. U. S., 227 U. S. 331 [33 S. Ct. 226], 57 L. Ed. 450 [Ann. Cas. 1914C, 128], wherein it was held that books in which were entered the weights of importations of sugar by city weighers were admissible in evidence, without calling the weighers who had made the entries to prove the books; and in this case (the Heike case) the court cited in support of its ruling on this point 2 Wigmore on Evidence, sections 1521 and 1530.

"The Tennessee case of Continental National Bank v. First National Bank, supra, was cited and followed in the case of Heid Bros. v. Commercial National Bank, Tex. [Com. App.], 240 S. W. 908, 24 A. L. R. 904, 910. See also Kuennan v. U. S. Fidelity & Guaranty Co., 159 Mich. 122, 123 N. W. 799; Chisholm v. Beaman Machine Co., 160 Ill. 101, 43 N. E. 796; Mississippi River Logging Co. v. Robson [8 Cir.], 69 F. 773, 16 C. C. A. 400, 408; Culver v. Marks [122] Ind. [554, 23 N. E. 1086], 7 L. R. A. 489, 494 [17 Am. St. Rep. 377]; Ency. of Law (2 Ed), pp. 912, 913, 918, 919.

"An elementary rule requires the production of 'the best evidence of which the case, in its nature, is susceptible.' But, 'in requiring the production of the best evidence applicable to each particular fact, it is meant that no evidence shall be received, which is merely substitutionary in its nature, so long as the original evidence can be had. The rule excludes only that evidence which itself indicates the existence of more original sources of information. But where there is no substitution of evidence, but only a selection of weaker, instead of stronger proofs, or an omission to supply all the

proofs capable of being produced, the rule is not infringed .' 2 Jones on Evidence (2 Ed), sec. 753, p. 1397, quoting from Greenleaf on Evidence, Sec. 82.

"The 'slips of paper' on which the lumber inspectors kept the record of the lumber measured by them and the small 'pocket ledger' in which Harwell first transcribed from the slips of paper a part of the measurements furnished to him by the inspectors were voluntarily destroyed by Harwell under the circumstances before stated: but 'it is the general rule that one who had destroyed a written instrument may introduce secondary evidence to prove its contents, although the destruction thereof was voluntary and deliberate, if in destroying the instrument he acted, either upon an erroneous impression as to the effect of his act, or under circumstances which rendered the act free from all suspicion of intentional fraud.' 10 R. C. L., p. 916, sec. 74. To same effect, see 2 Jones on Evidence (2 Ed.), sec. 826, p. 1512.

" 'Books of account have always been regarded as a species of secondary evidence, admissible in favor of the party keeping them because of the necessities of the case, not because they are the best evidence of the transactions recorded in them.' Jones on Evidence (2 Ed.), sec. 767, p. 1423.

" ' 'Since a book of accounts transcribed from other accounts or memoranda is a book of original entry only when the primary accounts or memoranda were merely temporary, it follows that copies of accounts taken from books of original entry cannot be regarded as matter of original entry and as a general rule are not admissible in evidence. An exception to the rule that copies are inadmissible arises where the original books have been lost or destroyed, or are in the possession of a non-resi-

dent. Yet copies or transcripts of books of account should not be received unless the proof shows that the originals themselves have been so kept as to be themselves admissible, were they produced within the rule allowing the use of a party's books as evidence in his favor.' 10 R. C. L., p. 1176, sec. 374.

"Without further discussion of the point, we are of the opinion that the ledger account exhibited and identified by the witness Harwell, and Harwell's testimony relating thereto, which constitutes the basis of the complainant's second assignment of error, were competent and admissible evidence, and that assignment of error is overruled."

■ As stated, no item appearing on the ledger sheets produced by the bookkeeper in this case has been contradicted by any evidence introduced. We are therefore of the opinion that the Chancellor did not commit error in overruling the exceptions to the introduction of this evidence.

It is insisted for the defendants that the Chancellor erred in holding that the contract between the defendants and Flautt & Markley was assignable and that complainant had a right to maintain this suit in the name of Flautt & Markley, for the use and benefit of the Edgewood Lumber Company.

This assignment or transfer by Flautt & Markley to the Edgewood Lumber Company is filed and made an exhibit in the case. It does not contain any provision against its assignability.

■ ■ The contract contains nothing to indicate that there was any reliance upon any personal skill, trust or confidence in Flautt & Markley. All they were bound to do was to advance money and to pay for the lumber

manufactured by the defendants. In addition the defendants knew of the assignment and continued to carry out their contract and to receive payments from the Edgewood Lumber Company. They cannot now be heard to complain. The rule is stated in Vol. 4 American Jurisprudence, page 238, Section 11, as follows: "In the absence of an express provision against assignments, a contract which does not involve personal skill, trust, or confidence is assignable without the consent of the other party, whereas contracts which do involve those qualities are not assignable; but if the other party to such a contract assents thereto, a valid assignment may be made. Moreover, the assignment of such a contract may be ratified by the other party."

In 39 American Jurisprudence, page 868, Section 15, it is said: "Under the common-law practice which requires actions to be instituted and prosecuted in the name of the person who has the legal title to the cause of action, where the beneficial interest and the legal title are vested in different persons the right of the owner of the beneficial interest is protected by suit instituted by or in the name of the holder of the legal title as nominal plaintiff for the benefit of the owner of the beneficial interest, who is called the 'use' or 'equitable' plaintiff. Thus, at common law, the right of an assignee of a chose in action can be enforcer only by means of an action in the name of the assignor, the nominal plaintiff, for the use of the assignee. And if the holder of the legal title fails or refuses to bring an action for the benefit of the equitable or beneficial owner, the latter may institute the action in the name of the owner of the legal title for his own benefit; it is not necessary that the action be initiated by the legal plain-

tiff, but it is sufficient if it is brought in his name. The owner of the beneficial title and interest may use the name of the owner of the legal title, without the latter's consent or knowledge. The owner of the legal title is not allowed to object to the use of his name by the owner of the beneficial title and interest or to interfere with the conduct of the suit commenced by the latter. In an action thus instituted in the name of one person for the benefit of another, or for his use, the cestui que use is regarded as the real party in the proceeding.''

Section 8619 of the Code of Tennessee is as follows: ''Real plaintiff.—In all suits prosecuted in the name of one person for the use of another, the person for whose use the suit is brought shall be held to be the real plaintiff of record.''

We have carefully considered the other insistences of the defendant as shown by the assignments of error and find no merit in them. At the time the Chancellor considered the motion of the complainants all contentions of the complainant made in the bill had been abandoned, except the account as shown by the ledger and no item in this account was questioned by the defendants.

The record fully sustains the action of the Chancellor. There were no issues of fact appearing as to the account and therefore nothing for the jury to pass upon. The complainant was clearly entitled to an equitable lien upon the saw mill and equipment for the purchase of which it had furnished the money.

The Chancellor did not abuse his discretion in disallowing an amendment to the answer and cross-bill of the defendant offered after the close of all the testimony, seeking to raise a question that was not material

to the issues and in which it does not appear that there was any merit.

It results therefore that all assignments of error are overruled and the decree of the Chancellor is affirmed.

The appellant will pay the costs of the appeal.

Affirmed.

Felts and Hickerson, JJ., concur.