HALLMARK BUILDERS, INC., et al., Appellants,

v.

L. L. ANTHONY dba Anthony Electric, Appellee.

No. 8698.

Court of Civil Appeals of Texas, Amarillo.

Jan. 31, 1977.

Rehearing Denied March 21, 1977.

Gibson, Ochsner, Adkins, Harlan & Hankins (Wayne P. Sturdivant) Amarillo, for appellant.

Billy Britt Jarvis, Spearman, for appellee.

ELLIS, Chief Justice.

This appeal arose out of a suit in quantum meruit by an electrical subcontractor against a general contractor. The case was tried without a jury and the trial court rendered judgment favorable to the plaintiff subcontractor. The defendant contractor challenges the evidentiary support for the trial court's findings upon which the judgment was based. Reversed and remanded.

L. L. Anthony dba Anthony Electric, the subcontractor, performed electrical work

and furnished electrical materials in the construction of three buildings by Hallmark Builders, Inc., a general contractor, for the owners. These buildings, used for "Dairy Queen" business establishments, are located in Spearman, Stratford and Gruver, Texas. In 1973, Anthony entered into a written contract with Hallmark to perform the electrical work on the Spearman Dairy Queen. This project was finished in July, 1973. The total contract price paid by Hallmark for the electrical work on the Spearman project was $4,600.00.

In the latter part of 1973 and the early part of 1974, Anthony commenced the electrical work on the Stratford and Gruver Dairy Queen buildings without a written contract. The electrical work required for each of the Stratford and Gruver Dairy Queen buildings was substantially the same as that required for the earlier Spearman project.

Upon completion of the Stratford and Gruver Dairy Queen projects, Anthony billed Hallmark for the sum of $6,050.00 on each of the Stratford and Gruver projects for the electrical work and materials furnished. Hallmark paid Anthony $3,000.00 on each project, leaving the sum of $6,100.00 ($3,050.00 on each project) as the amount which Anthony claimed to be due and owing by Hallmark.

The trial court found that the reasonable value of the work done on the Stratford and Gruver Dairy Queens, respectively, was $6,050.00 for each project. After deducting payments already made by Hallmark, the trial court rendered judgment against Hallmark for $6,100.00, plus attorney's fees. Hallmark predicates its appeal on three points of error, contending that there is (1) no evidence, or (2) factual insufficiency of the evidence to support the trial court's finding as to the reasonable value of the work performed on the two projects, or (3) such finding is so against the great weight and preponderance of the evidence as to be unjust.

■ In order to recover in a quantum meruit suit, the plaintiff must establish by competent evidence the reasonable value of the services performed and the materials furnished. See *Colbert v. Dallas Joint Stock Land Bank,* 136 Tex. 268, 150 S.W.2d 771 (1941). In seeking to establish the reasonable value of Anthony's work in connection with the construction of the two Dairy Queen buildings, Anthony identified five exhibits as the material lists for the Stratford and Gruver jobs. These exhibits, said to be "invoices," were compiled from original records. Anthony testified:

. . . when we work on a job we normally write down all the material we use every day, in a note book. And, then, when the job is completed my secretary, or myself, list it on invoices like this.

It is noted that the respective exhibits (invoices) submitted cover "Stratford & Gruver Dairy Queen," apparently listing all of the items, including materials, total working days of labor and total mileage, for both jobs. The exhibits listing items and charges do not show specific dates as to when each "item" listed was furnished, or when work was performed or when the invoice was compiled. Anthony further testified that the invoices were written up after the two jobs were over in July of 1974 and were made up from pads carried in the trucks. These pads or note books above mentioned were not introduced in evidence. The testimony of Anthony shows that the Stratford job was started in December, 1973 and finished in April of 1974, while the Gruver job was started in January, 1974 and finished in July of 1974.

Hallmark objected to the introduction of these exhibits on the grounds that they were not business records but were summaries of business records and that the business records (note books) were not before the court. The above described five invoices were admitted into evidence over Hallmark's objections to the effect that such invoices were hearsay and did not properly come within the business records exception to the hearsay rule.

■ Anthony contends that the evidence supports the trial court's finding on the basis of the business records exception to

the hearsay rule under Article 3737e, Vernon's Ann.Tex.St., which, in part, provides:

Section 1. A memorandum or record of an act, event or condition shall, insofar as relevant, be competent evidence of the occurrence of the act or event or the existence of the condition if the judge finds that:

(a) It was made in the regular course of business;

(b) It was the regular course of that business for an employee or representative of such business with personal knowledge of such act, event or condition to make such memorandum or record or to transmit information thereof to be included in such memorandum or record;

(c) It was made at or near the time of the act, event or condition or reasonably soon thereafter.

It is our opinion that the above described five exhibits were not admissible as an exception to the hearsay rule under the Business Records Act (Art. 3737e, supra), and that any testimony predicated on such exhibits was inadmissible as hearsay. *See Lewis v. Southmore Savings Association,* 480 S.W.2d 180 (Tex.1972) and cases cited therein. Although Anthony testified that notations were made regarding the materials as the job progressed, such memoranda was not contained in the exhibits (invoices) introduced but instead were kept on notes or pads which were not available because they were usually destroyed after the invoices were prepared. The exhibits introduced were not the records made or at near the time of the act but were summaries of the records and the underlying or supporting records were not introduced into evidence or available at the trial.

In discussing the admissibility of evidence summarizing the contents of voluminous documents in the case of *Lewis v. Southmore Savings Association,* supra, the Supreme Court stated:

The witness may testify of his extractions or of a net balance of accounts, but the full documents or records must "be placed at hand in court, or at least be made accessible to the opposing party, in order that the correctness of the evidence may be tested by inspection if desired, or that the material for cross-examination may be available." 4 Wigmore, Evidence § 1230 (3d ed. 1940). The Texas cases require that the source records be admissible and be produced. *Dallas Railway & Terminal Co. v. Guthrie,* 146 Tex. 585, 210 S.W.2d 550 (1948); *Sherwin-Williams Co. v. Perry Co.,* 424 S.W.2d 940 (Tex.Civ. App.1968, writ ref'd n. r. e. with per curiam opinion 431 S.W.2d 310); *Sam Bloom Advertising Agency v. Brush,* 284 S.W.2d 265 (Tex.Civ.App.1955, no writ).

To the same effect see *Black Lake Pipe Line Co. v. Union Const. Co.,* 538 S.W.2d 80 (Tex.1976) and cases cited therein relating to the inadmissibility of summaries because they did not meet the requirements as an exception to the hearsay rule under Art. 3737e, or were not the best evidence of the underlying records. *See also, Jackson v. Fontaine's Clinic, Inc.,* 499 S.W.2d 87 (Tex. 1973).

In support of his contention that the exhibits here introduced comply with the Business Records Act as an exception to the hearsay rule, Anthony cites the case of *University Savings & L. Ass'n v. Security Lumber Co.,* 423 S.W.2d 287 (Tex.1967). This was a suit on a sworn account by a lumber company against a construction company and its guarantors. We note particularly that, as proof of the indebtedness, the lumber company "offered in evidence a large number of invoices and 'delivery tickets'." 423 S.W.2d 289.

In describing the method of record keeping and, specifically the manner of preparation of the invoices and delivery tickets, the court's opinion set out:

. . . Each invoice contains a list of the materials ordered, the date of the order, the price of the various materials included in the order and the total charge for all included materials.

[The lumber company's] president testified that the invoices were made in the regular course of business; that in the regular course of business an employee took the orders for the materials and

wrote them down on cardboard "loading tickets" which were sent to employees whose duty was to load the materials for delivery; after the listed materials were loaded on trucks, the loading tickets were then returned to the office and from them other employees made up the invoices showing the sale to [the construction company] of the same materials as were listed on the loading tickets and the date of sale and delivery; another employee then checked the materials on the trucks against the invoices to make certain the orders were properly filled, and gave the truck drivers two copies of the invoices, one to be turned over to the purchaser upon delivery and the other to be signed by someone at the construction project and returned to the office as a "delivery ticket"; prices were then entered on the invoices and on fourth copies which were mailed to the construction company. [The lumber company's] president also testified that the construction company was given a written quotation of prices before any materials were ordered.

It was held that the president of the lumber company was a qualified witness within the meaning of Art. 3737e and that his testimony supported the implied finding of the trial judge that the invoices were made in the regular course of business and were made at or near the time of the recorded act or event or reasonably soon thereafter. Further, it was held that the entries contained in the invoices admitted into evidence under Art. 3737e were competent evidence that the construction company had offered to buy the listed materials and the lumber company had accepted the offer.

The invoices containing the detailed information above described together with the underlying and supporting data provided by the "delivery tickets" which were admitted into evidence, is quite distinguishable from the "invoices" in the instant case. The invoices in the *Security* case were not summaries made after the whole project was completed, but were records related to

and made up as each respective load of materials was delivered to the purchaser. Each delivery ticket (a copy of the invoice) was a supporting document and highly corroborative of the invoice, and both documents showed the detailed items, along with date of sale and delivery of each load of material sold. In *Security,* invoices and delivery tickets were introduced in evidence. Here, the exhibits denominated as invoices were in fact summaries not made up at the time of delivery of the materials but in some instances compiled several months after the delivery. There was no supporting or corroborative data such as the delivery tickets in the *Security* case to evidence that the delivery of the materials in the instant case was recorded at or near the time of the act or transaction. We do not believe that the facts and circumstances involved in the *Security* case are sufficiently analogous for the decision in such case to be controlling here.

After the exhibits summarizing the materials furnished were admitted into evidence, Anthony then testified as to his opinion concerning the fair market value of each item shown on the respective exhibits. He testified that he made a memorandum as to the worth of each item at the time of making the invoice. He stated that in making the pricing entries he used information compiled through his regular National Pricing Service, a publication that was not introduced in evidence or established as a proper predicate for the testimony offered regarding the price of the materials. Also, Anthony was unable to say as to many items exactly how much material was used on the respective jobs, and he could not be specific in many instances concerning the manner in which he applied the information from the pricing publication. Moreover, the plaintiff's witness, Louis Schnell, who testified as an expert electrician, was unable to give specific information or unequivocal testimony as to the electrical plans or blueprints for the respective jobs, or as to prices, discounts, and markups concerning the items about which he testified. As to the value of the material furnished

and labor performed, Schnell stated that he based his total valuation on the prevailing prices at the particular time of his examination of the invoices, which amount was not shown to be the same as the reasonable value at the time the work was done or the materials were furnished.

██ In view of our holding that the exhibits were inadmissible as hearsay and not admissible under the Business Records Act as an exception to the hearsay rule, we have carefully considered the remainder of the testimony introduced by the plaintiff concerning his claim for recovery for the materials furnished and work performed. As above indicated, much of the testimony was either based upon inadmissible exhibits or data or was not sufficiently definite as to quantities of materials used or as to prices or values to support the court's finding.

When we consider the plaintiff's evidence in the light most favorable to the court's finding, we cannot say there is no evidence to support the finding; however, after a careful consideration of the entire record, we have concluded that the evidence is factually insufficient to support the trial court's judgment. We overrule Hallmark's "no evidence" point and sustain its factual insufficiency point. We do not reach the third point asserting that the court's finding is against the great weight and preponderance of the evidence.

For the reasons above stated the judgment of the trial court is reversed and the cause is remanded to the trial court for another trial.