No. 82-16

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

-------------------

WILLIAM R. MORSE,

Plaintiff and Respondent,

vs.

LEO J. CREMER, JR., for himself,
individually and for and on behalf of
BERTHA R. CREMER, INC., et al.,

Defendants and Appellants.

-------------------

Appeal from: District Court of the Sixth Judicial District,
In and for the County of Park *Suit Tran*
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellants:

Berger, Sinclair & Nelson, Billings, Montana

For Respondent:

Drysdale, McLean, Screnar, Cok & Wheat, Bozeman,
Montana

-------------------

Submitted on briefs: April 22, 1982

Decided: JUN 30 1982

Filed: JUN 30 1982

_____
Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

William Morse brought this action for attorney fees against the defendants. The cause was tried before the District Court, sitting without a jury, in the Sixth Judicial District of the State of Montana, in and for the County of Sweet Grass. Judgment was entered for Morse against all named appellants for the full amount of the complaint, $13,338.69. All appellants appeal the judgment.

The theory of respondent's suit was for an accounting; basically for attorney fees rendered over a long period of time to a rancher client. Following numerous motions, proceedings and discovery, the trial court issued a pretrial order on April 22, 1981. The agreed facts arising out of the pretrial order were (1) that the plaintiff is an attorney at law, duly licensed to practice in the State of Montana, who performed legal services for the defendants prior to the filing of the action in this matter; and (2) that $50 per hour is a reasonable attorney fee for services rendered by respondent.

Respondent is a lawyer in Absarokee, Montana, and has represented appellants in various legal matters from before 1970 through March 1980. During this time respondent and appellants established an attorney/client relationship that was close, informal and personal. Respondent also billed appellants informally. The testimony indicates that, as respondent performed work, he prepared a slip listing the services performed and the time involved. Each month the services and time involved were added to a single bill.

The slips from which the billings were made were shown to appellants, and the charges and services over this

-2-

period of time were discussed. After this was done, respondent disposed of the slips and transferred a memorandum of the amounts involved to an account book of appellant, Leo J. Cremer, Jr., with notations as to the litigation or services involved. Testimony at trial indicated respondent gave appellants a monthly billing. At various times over the years the account remained unpaid and accumulated into rather large amounts of money without questions being raised by either side. When payments were made, they were made by Leo J. Cremer, Jr., on his ranch account. The checks from Cremer to respondent indicated merely a payment of fees.

From April 1977, until March 1980, respondent represented Leo J. Cremer, Jr., in an action entitled Cremer v. Cremer (1981), ___ Mont. ___, 627 P.2d 1199, 38 St.Rep. 574, a case Cremer lost. During this same period of time respondent handled numerous other matters and actions for appellants. Respondent claims that in January 1980 appellants owed him more than $10,000 and that at that time Leo J. Cremer paid respondent $10,000. Respondent indicated through an exhibit that all accounts except the Cremer v. Cremer case were paid to date by the $10,000 payment. Late in January 1980, appellant requested that respondent return to him $5,000 of the $10,000 paid earlier that month. Leo Cremer, Jr., agreed in writing to repay this sum to respondent but did not do so. At the time he returned the money to appellants, respondent added the $5,000 to the Cremer account as part of the accounts receivable.

Throughout this time the informal relationship of the parties was such that respondent continually performed services for appellants and Cremer periodically made pay-

-3-

ments to respondent on his behalf and on behalf of the other appellants for services performed. Respondent's records indicate that throughout this period, in addition to his hourly charges for his services, he requested and received from appellants costs and other expenditures. The trial court found these expenses reasonable and necessary.

In addition to his findings and conclusions in favor of respondent, the trial court judge submitted a memorandum setting out the reasons for his ruling. There the court noted that the central issue was how much was owed and whether the proof of the account made under Rule 803 or 1006, Mont.R.Evid., was applicable. The court noted:

> "The defendant objects to its admission; he insists it is at the best nothing more than a summary; that the original time and costs sheets are the original documents. The evidence shows plaintiff lawyer made these entries from time and cost sheets and then destroyed them!
>
> "The Court realized this contest on admissibility was crucial and ruled to take it under advisement, asked for briefs and let the evidence proceed subject to defendants' objection.
>
> "I rule it admissible under Rule 803, M.R.Ev.
>
> "It adds nothing to the record to criticize the sloppy, meandering way the account is, but the record is eloquent that both houses --both the attorney's and the rancher's--were guilty of the same methods of record keeping. The payment of the check by rancher to lawyer and partial payment back is a bookkeeper's nightmare. I've attached the diagram furnished by plaintiff to highlight this topsy-turvy situation."

The issues presented on appeal are:

1. Whether the respondent's Exhibit 1 is admissible under Rule 803(6), Mont.R.Evid.

2. Whether the respondent's Exhibit 1 is admissible under Rule 1006, Mont.R.Evid.

3. If respondent is entitled to judgment, whether he is entitled to judgment against Bertha Cremer, Inc., Cremer Rodeo Land and Livestock, Bertha Cremer Enterprises, Crazy Mountain Resources and Bertha Cremer.

We affirm the District Court and find its admission of the evidence under Rule 803(6), Mont.R.Evid., controlling here.

Rule 803(6), Mont.R.Evid., provides:

"<u>Hearsay exceptions: availability of declarant immaterial</u>.

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

". . .

"(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time of the acts, events, conditions, opinions, or diagnosis, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

Appellants argue that respondent's Exhibit 1 does not conform to the requisites of Rule 803(6), Mont.R.Evid., because under this rule three criteria must be met before the document is admissible to the hearsay rule: (1) the document must be a memorandum; (2) the memorandum must be made at or near the time of the event; and (3) it must be made in the ordinary course of business. Appellants argue that the second element has not been satisfied here, citing

-5-

30 Am.Jur.2d Evidence, section 938.

As previously noted, the relationship between respondent and appellants was a continuing one brought about by numerous lawsuits and a personal confidential relationship that sometimes involved daily telephone calls and other frequent communications. One of the business relationships that respondent had with appellants was a contract for a total of $25,000 in which respondent would probate the estates of the appellant and his son or wife, whichever died first. That contract provided for annual payments of $2,500 a year. Respondent testified about his bookkeeping methods:

> "Our office procedure involved keeping time and charges memorandum on small memorandum slips that were kept for that purpose, on a temporary basis until such time as they were transcribed into this ledger. And we usually retain them until after the billing to the client in case there is any question about it. And after the billing to the client the notes involved that appear to be superfluous, including these, are discarded."

Some of the charges, particularly for appellate work, were allowed to accrue for a period of time before they were billed to the client. This bookkeeping system appeared to be satisfactory to all concerned until 1980, when the $5,000 chargeback came into question.

In support of his contention that Exhibit 1 does not reflect the timeliness of entry of the documents required to comply with the second part of Rule 803(6), appellants rely on two cases, Tabata v. Murane (1946), 76 Cal.App.2d 887, 174 P.2d 684, and Hallmark Builders, Inc., et al. v. Anthony (Tex. 1977), 547 S.W.2d 681. In Tabata the court stated:

> "The court would have been justified in regarding the writings as mere fragments of an account relating to only a part of the business dealings of plaintiff and decedent. Before an account is admissible in evidence

for the purpose of establishing a cause of action of an openbook account, it must be shown to have been accurately kept, which was not done in the instant case, and it must be so complete as to show the balance of indebtedness due from one party to the other, in which respect also plaintiff's evidence was deficient." 174 P.2d at 686.

Here, while respondent's testimony indicated that certain errors were made and later corrected, the trial judge found that the entries testified to were accurately made. Therefore, Tabata is not applicable.

Hallmark Builders, supra, is clearly distinguishable. In that case, the court found that since some invoices for the sale of building materials were not compiled until several months after the order had been filled, the invoices were not admissible. Here, respondent testified that all slips were immediately entered into his books. In addition, the billing was discussed each month with appellant who was given an opportunity to, and at times did, discuss and disagree with various items appearing on the slips before they were disposed of.

This Court appointed a Commission on the Rules of Evidence and its report appears with Rules of Evidence in 3 MCA Annotations. The exception to Rule 803(6) relied on here was identical to that in the uniform rules of evidence except for a phrase deleted from the federal and uniform rule which might have resulted in a greater restriction to the then existing Montana law. The Commission Comments indicated that the exception in Montana's uniform business records evidence rule is substantially the same as the federal rule and that Montana had, prior to the adoption of the new rules, operated under the uniform act. As to this exception, the Commission said in part:

-7-

"It should be noted that the exception allows opinions and diagnosis (contained in the record) to be admissible; that is consistent with Klaus v. Hilberry, 157 Mont. 277, 285, 485 P.2d 54 (1971), which allowed medical reports containing opinions and diagnosis to be admitted and referred to Section 93-801-2, R.C.M. 1947 [superseded]. It should also be noted that the exception could be seen as an expansion of existing Montana law to the extent that the records of regularly conducted activity in a wide variety of forms, including computer printouts are admissible."
3 MCA Annotations at 260.

We find that the foundation laid for admission of the account in the instant case more than satisfies the requirement of the uniform act or Rule 803(6). The questions propounded by respondent in laying the foundation for the account were prepared in writing for trial and were specifically based on requirements of Rule 803(6) as well as the former uniform act. Respondent not only covered but indeed fulfilled the requirement for foundation under the rule.

Respondent relies on Edgewood Lumber Co. v. Hull (1949), 32 Tenn.App. 577, 223 S.W.2d 210, 17 A.L.R.2d 228, for the admissibility of his account in this case. There, the plaintiff's bookkeeper made entries to the defendant's account from a temporary memorandum consisting of account sheets and tickets which were disposed of upon the entry to the defendant's account. The defendant claimed the trial court erroneously admitted the account into evidence because the slips and tickets were not produced and therefore the account was not the best evidence. The appellate court affirmed the action of the trial court, saying:

"Hence, following the rule of necessity which originated the admissibility of books of account in evidence, the courts do not regard such temporary memoranda as the original entries, but look to the permanent records as such original entries, where properly verified. It is now well-established that the

first permanent records of the transactions by the creditor are to be deemed the original entries, if made in the usual course of business and within a reasonably short time after the transactions themselves, although the items may have been first entered as a temporary assistance to the memory upon some slate, book, paper or other substance. It is of no consequence what the material was on which the memoranda were made or the size or shape of it, as long as it was a mere minute, not intended to be preseved as evidence itself of the transaction, but to be used in preparation of such evidence. In such cases the books of account into which the entries have been transferred from the temporary means of record, and not the temporary records themselves, are the books of original entries.

"'The character of a book as one of original entry is not affected by the mere fact that the temporary memoranda were made by a person other than the one who kept the book offered into evidence. In other words, a book of account made up in the usual course of business from the slips, reports, or memoranda, furnished by the employees who conducted transactions, which constitutes the first permanent record of the transactions entered in it is a book of original entry and admissible in evidence as such.'" Edgewood Lumber, 223 S.W.2d at 212.

See, Jones on Evidence (5th ed. 1958), section 614.

Here, not only was the trial court correct in admitting the account under Rule 803(6), it was also correct in its finding of fact that respondent actually performed the work for appellants because respondent testified directly, from his knowledge, as to the specific services performed and the subsequent charges.

Since we find the exhibit was properly admitted under Rule 803, it is not necessary to consider whether it was admissible under Rule 1006, Mont.R.Evid.

The next issue raised for our consideration is whether respondent is entitled to a judgment against Bertha R. Cremer, Inc., Cremer Rodeo Land and Livestock, Bertha

Cremer Enterprises, Crazy Mountain Resources and Bertha R. Cremer.

We note that this issue is raised for the first time on appeal. Cremer's argument at the time of the pretrial order was that he had already paid for these services, not that the services had not been performed for the various appellants.

Leo J. Cremer, Jr., when called as a witness by respondent, answered the following question:

"Q. And in the management of these you have dealt with them all as one Cremer enterprise, have you not? A. I have been involved in all of them, yes."

His testimony, as well as other testimony, indicated that Leo J. Cremer, Jr., was in charge of the management of all the various entities named as defendants and that they were dealt with as one Cremer enterprise.

The final consideration is the effect of the court's pretrial order when issued. This issue is of considerable import both to the District Court and this Court in arriving at our decisions. Rule 16, M.R.Civ.P., provides:

"The court shall make an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. The court in its discretion may establish by rule a pretrial calendar on which actions may be placed for consideration as above provided and may either confine the calendar to jury actions or to nonjury actions or extend it to all actions."

Such an order was made in this case and provided in pertinent part:

"The following facts were admitted, agreed to be true and require no proof.

"1. The Plaintiff is an attorney at law, duly licensed to practice in the State of Montana and performed legal services for the Defendants, prior to the filing of the action in this matter.

"2. That $50.00 per hour is a reasonable attorney's fee for services performed by Plaintiff.

"PLAINTIFF'S CONTENTIONS:

"Plaintiff's contentions are as follows:

"1. Plaintiff is a duly licensed and practicing attorney in the State of Montana and performed legal services for the Defendants at the reasonable and agreed value of $50.00 per hour.

"2. That Defendants owe Plaintiff for such legal services the sum of $13,338.69, together with interest and costs.

"DEFENDANTS' CONTENTIONS:

"Defendants' contentions are as follows:

"That Defendants do not owe Plaintiff the attorney's fees claimed, or any attorney's fees, they having fully paid Plaintiff for all legal work completed by him, or for them, in the past.

"ISSUES OF FACT:

"The issues of fact are as set forth in the Plaintiff's and Defendants' contentions."

From the above portion of the pretrial order and in view of the facts admitted, the trial court was left with only two contentions to be proved by the respondent--namely, that the appellants agreed to pay the $50 an hour and that they owed the sum of $13,338.69 plus costs. Appellants' sole contention was that they owed nothing, having fully paid the respondent.

Respondent's testimony is left uncontradicted that the agreed value was in fact $50 per hour and that he did

-11-

perform the services of value as contended and that appellants produced no proof whatsoever of payment. We rely on Davis v. Davis (1972), 159 Mont. 355, 360, 497 P.2d 315, 318, in deciding this matter where this Court held:

> "The pretrial order setting forth defendant's contentions indicates that the contracts under which the plaintiffs were employed were terminable at will, and maintains a denial of any of plaintiffs' alleged contracts with defendant. This Court is compelled to agree with plaintiffs' argument that it stands to reason if there were no contracts there could be no breaches, and if the agreements were terminable at will, the plaintiffs were entitled to terminate at any time they saw fit. However, of more crucial weight is the procedural process which recognizes that the issues of waiver and breach were not made issues at the trial and thus may not be introduced on appeal. This Court has said on numerous occasions that it will consider for review only those questions raised in the trial court. [Citing cases.]"

Here the state of the record and the proof produced at trial supports the court's findings of fact and judgment. The judgment is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-12-