No. 98-346

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 88N

KEITH WARREN SMITH,

Petitioner and Appellant,

v.

OLD REPUBLIC INSURANCE COMPANY,

Respondent and Insurer for

BOISE CASCADE CORPORATION,

Employer.

APPEAL FROM: Workers' Compensation Court

State of Montana

No

The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Keith Warren Smith, Roundup, Montana (pro se)

For Respondent:

Robert E. Sheridan, Garlington, Lohn & Robinson, Missoula, Montana

Submitted on Briefs: December 17, 1998

Decided: April 27, 1999

Filed:

_____

Justice James C. Nelson delivered the Opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. Keith Warren Smith (Smith), appearing *pro se*, appeals a decision of the Workers' Compensation Court denying his claim against Old Republic Insurance Company (Old Republic) for medical and travel expenses with respect to a July 25, 1997 consultation with a specialist in Seattle, Washington. We affirm.**

**¶3. We address the following issues on appeal:**

**¶4. 1. Whether the Workers' Compensation Court erred by not setting aside the settlement agreement between the parties on the basis of mutual mistake of material fact.**

**¶5. 2. Whether the Workers' Compensation Court properly rejected Smith's claim that the doctrines of estoppel and laches preclude Old Republic from denying liability for Smith's July 25, 1997 consultation in Seattle.**

**¶6. 3. Whether the Workers' Compensation Court erred in denying Smith's claim against Old Republic for medical benefits and travel expenses in connection with the July 25, 1997 consultation in Seattle.**

## Factual and Procedural Background

¶7. Smith was injured on June 14, 1990, while within the course and scope of his employment as a truck driver with Boise Cascade Corporation (Boise Cascade). At the time of Smith's injury, Boise Cascade was enrolled under Plan II of the Workers' Compensation Act and Old Republic was Boise Cascade's compensation carrier. Old Republic accepted liability for Smith's injury and paid various compensation and medical benefits on his behalf.

¶8. The primary injury sustained by Smith was to his left shoulder. Dr. Willard Hull in Billings provided initial treatment of the shoulder injury. As part of that treatment, Dr. Hull performed surgery on Smith's shoulder on October 1, 1990.

¶9. Smith returned to work as a warehouse person and forklift operator in March 1991. However, he left work on June 17, 1991, due to pain in his left shoulder. Smith subsequently sought a second opinion from Dr. Thomas Johnson, an orthopedic surgeon in Billings. Dr. Johnson became the primary treating physician for Smith in September 1991. He determined that Smith had a recurrent tear of the rotator cuff of his left shoulder. Dr. Johnson referred Smith to Dr. Frederick Matsen, III, Chairman of the Department of Orthopedics at the University of Washington Medical Center in Seattle, Washington. Smith traveled to Seattle to consult with Dr. Matsen on October 11, 1991. Old Republic paid for that visit together with Smith's travel expenses to Seattle.

¶10. Dr. Matsen concurred with Dr. Johnson's diagnosis of a rotator cuff tear and recommended physical therapy and additional surgery. Hence, on February 4, 1992, Dr. Johnson performed a second surgery to repair the rotator cuff in Smith's left shoulder.

¶11. On December 2, 1992, Smith and Old Republic entered into an agreement to settle Smith's entitlement to compensation benefits. In that agreement, Smith reserved the right to future hospital and medical benefits. This agreement was approved by the Department of Labor and Industry on December 15, 1992.

¶12. Smith traveled to Seattle for follow-up evaluations with Dr. Matsen in October 1995 and March 1997. Old Republic paid for both consultations and for travel

expenses for each visit. On February 20, 1997, Dr. Johnson noted, during a follow-up evaluation in his office, that further treatment on Smith's shoulder was not needed at that time.

¶13. On May 8, 1997, Smith visited with Dr. Johnson about a deposition in an unrelated matter. During that visit, Smith mentioned he was having some intermittent tingling and numbness down his left arm and asked whether he might be suffering from thoracic outlet syndrome. Dr. Johnson recommended that Smith see Dr. John Moseley or Dr. John Cook, as they were the two physicians in Billings who had the most expertise in that area. Smith had not previously been diagnosed with thoracic outlet syndrome by either Dr. Johnson or Dr. Matsen.

¶14. Rather than seeing either Dr. Moseley or Dr. Cook, Smith requested that Dr. Johnson write a letter of referral to Dr. Matsen. Smith then contacted Gary Doerr, Senior Claims Examiner for Sedgwick Claims Management Services, who was handling Smith's claim for Old Republic, and requested that Old Republic pay his travel expenses to Seattle as well as Dr. Matsen's fee for another consultation. Upon receipt of Smith's request, Doerr contacted Dr. Johnson's office to obtain more information regarding the proposed trip to Seattle. On July 21, 1997, Dr. Johnson's office notified Doerr by telephone that there was no necessity for the visit with Dr. Matsen. Doerr then contacted Smith and advised him that Old Republic would not pay for the visit with Dr. Matsen or for travel expenses to Seattle. Nevertheless, Smith elected to proceed with the trip to Seattle.

¶15. Smith saw Dr. Matsen on July 25, 1997. That same day, Dr. Matsen wrote a letter to Dr. Johnson summarizing his visit with Smith. The letter is silent concerning any diagnosis or consideration of thoracic outlet syndrome.

¶16. On October 10, 1997, Smith filed a *pro se* petition with the Workers' Compensation Court requesting that Old Republic be required to pay for the July 25, 1997 consultation with Dr. Matsen together with Smith's travel expenses to Seattle. A trial was conducted in Billings on February 2, 1998, with Smith representing himself.

¶17. On March 4, 1998, the Workers' Compensation Court issued its Findings of Fact, Conclusions of Law and Judgment wherein the court denied Smith's entitlement to medical and travel expenses in connection with the July 25, 1997

consultation. Smith appeals the decision of the Workers' Compensation Court.

## Standard of Review

¶18. This Court employs two standards of review for Workers' Compensation Court decisions: We review the court's findings of fact to determine if they are supported by substantial credible evidence and we review the court's conclusions of law to determine if they are correct. *Turjan v. Valley View Estates* (1995), 272 Mont. 386, 390, 901 P.2d 76, 79 (citing *Caekaert v. State Comp. Mut. Ins. Fund* (1994), 268 Mont. 105, 110, 885 P.2d 495, 498).

## Issue 1.

¶19. *Whether the Workers' Compensation Court erred by not setting aside the settlement agreement between the parties on the basis of mutual mistake of material fact.*

¶20. Smith argues that the Workers' Compensation Court erred by not setting aside the settlement agreement on the grounds of mutual mistake of material fact in that the settlement agreement was entered into based upon a diagnosis of rotator cuff tear and that he now may have thoracic outlet syndrome. Old Republic argues that Smith has raised the issue of mutual mistake for the first time on appeal and that, even if we assumed that this issue was properly raised in the trial court, the facts of this case do not satisfy the requirements for reopening a claim based upon a mutual mistake of material fact.

¶21. In his original petition in the Workers' Compensation Court, Smith asked that the settlement agreement be reopened on the basis of mutual mistake of material fact. Smith, however, failed to include this issue in the Pretrial Order as one of the issues to be determined by the Workers' Compensation Court. The procedural rules governing proceedings in the Workers' Compensation Court found at Title 24, chapter 5, subchapter 3 of the Administrative Rules of Montana, require that a pretrial order "supersede all other pleadings and shall govern the trial proceedings." 24.5.318, A.R.M. Hence, because this issue was not included in the Pretrial Order, the Workers' Compensation Court was not given the opportunity to consider it.

¶22. This Court may not consider for the first time on appeal an issue that was not

raised at the trial court level. *Sherrodd, Inc. v. Morrison-Knudsen Co.* (1991), 249 Mont. 282, 285, 815 P.2d 1135, 1137 (citing *Morse v. Cremer* (1982), 200 Mont. 71, 81, 647 P.2d 358, 363-64). The basis for this rule has been set forth as follows:

The rule applies to both substantive and procedural matters, as well as to a change in a party's theory of the case. *It is based on the principle that it is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider.* Furthermore, it is unfair to allow a party to choose to remain silent in the trial court in the face of error, taking a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is unfavorable.

*Day v. Payne* (1996), 280 Mont. 273, 276-77, 929 P.2d 864, 866 (emphasis added).

¶23. Since the Workers' Compensation Court was precluded from considering the issue of mutual mistake because it was not raised in the Pretrial Order, Smith has waived this issue and we may not now consider it on appeal. *Sherrodd*, 249 Mont. at 285, 815 P.2d at 1137.

## Issue 2.

¶24. *Whether the Workers' Compensation Court properly rejected Smith's claim that the doctrines of estoppel and laches preclude Old Republic from denying liability for Smith's July 25, 1997 consultation in Seattle.*

¶25. Smith contends that Old Republic is estopped from denying payment for Smith's July 25, 1997 visit to Dr. Matsen and the travel expenses associated with that visit because Old Republic had previously paid for other visits with Dr. Matsen in October 1991, October 1995 and March 1997. Smith also argues that the doctrine of laches dictates that Old Republic should pay the cost of the July 25, 1997 consultation with Dr. Matsen together with the travel expenses.

### *Estoppel*

¶26. "Equitable estoppel has long been recognized in Montana and is invoked to promote justice, honesty and fair dealing." *Billings Post No. 1634 v. Dept. of Rev.* (1997), 284 Mont. 84, 90, 943 P.2d 517, 520 (citing *In re Marriage of K.E.V.* (1994), 267 Mont. 323, 331, 883 P.2d 1246, 1251). It is designed to prevent one party from suffering a gross wrong at the hands of another party who has brought about the condition. *Kelly v. Wallace*, 1998 MT 307, ¶ 40, 972 P.2d 1117, ¶ 40, 55 St.Rep. 1271, ¶ 40 (citations omitted).

¶27. Equitable estoppel is based on the principle that a party cannot intentionally induce another party to unknowingly and detrimentally alter his position and then subsequently deny the just and legal consequences of those intentional acts. Hence, equitable estoppel claims rest on the concealment or representation of facts by the estopped party. *Kelly*, ¶ 43 (citations omitted).

¶28. To satisfy the doctrine of equitable estoppel, a party must demonstrate the following six essential elements:

(1) there must be conduct, acts, language, or silence amounting to a representation or concealment of material facts; (2) these facts must be known to the party estopped at the time of his conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him; (3) the truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel at the time it was acted upon by him; (4) the conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under the circumstances that it is both natural and probable that it will be so acted upon; (5) the conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it; and (6) he must in fact act upon it in such a manner as to change his position for the worse.

*Kelly,* ¶ 40 (citing *Dagel v. City of Great Falls* (1991), 250 Mont. 224, 234-35, 819 P.2d 186, 192-93). All six elements must be established before the doctrine of equitable estoppel can be applied. *Billings,* 284 Mont. at 90, 943 P.2d at 520 (citing *Elk Park Ranch, Inc. v. Park County* (1997), 282 Mont. 154, 166, 935 P.2d 1131, 1138). We have previously stated that equitable estoppel "is not favored and will be sustained only upon clear and convincing evidence." *Kelly*, ¶ 40 (citing *Ducham v. Tuma* (1994), 265 Mont. 436, 441, 877 P.2d 1002, 1006). Furthermore, the party asserting equitable estoppel bears the affirmative burden of proving its elements. *Kelly*, ¶ 43 (citations omitted).

¶29. In the case *sub judice*, Old Republic is not liable for the July 25, 1997 visit with Dr. Matsen simply because Old Republic paid for Smith's previous visits with him. The earlier visits were clearly related to the rotator cuff injury which Smith sustained in his industrial accident. The July 25, 1997 consultation with Dr. Matsen was based on Smith's desire to be evaluated for thoracic outlet syndrome.

¶30. Moreover, Smith has failed to establish that he relied, to his detriment, on a representation or concealment by Old Republic. Doerr wrote to Smith on July 21, 1997, and advised him that Old Republic would not pay for the visit with Dr. Matsen or the travel expenses to Seattle. The following day, Doerr's office telephoned Smith and again advised him that Old Republic would not pay for the visit with Dr. Matsen or the travel to Seattle. Consequently, Smith knew, prior to leaving for Seattle, that Old Republic would not authorize and pay for the July 25, 1997 visit to Dr. Matsen and related travel expenses. Hence, Smith cannot now claim that he relied on the fact that previous visits with Dr. Matsen had been paid when he was specifically notified that Old Republic would not authorize or pay for the July 25, 1997 visit.

¶31. Accordingly, we hold that the Workers' Compensation Court did not err in rejecting Smith's claim that Old Republic is equitably estopped from denying liability for Smith's July 25, 1997 consultation with Dr. Matsen.

*Laches*

¶32. This Court has previously stated that laches exists "where there has been an unexplainable delay of such duration or character as to render the enforcement of an asserted right inequitable, and is appropriate when a party is actually or presumptively aware of his rights but fails to act." *Larson v. Undem* (1990), 246 Mont. 336, 340, 805 P.2d 1318, 1321 (citations omitted). In order to apply the doctrine of laches, parties asserting laches must show that the passage of time has prejudiced them or has rendered the enforcement of a right inequitable. *Kelleher v. Board of Social Work Exam'rs* (1997), 283 Mont. 188, 191, 939 P.2d 1003, 1005 (citing *Helena Aerie No. 16 v. Mont. Dept. of Rev.* (1991), 251 Mont. 77, 81, 822 P.2d 1057, 1059).

¶33. In the case before us on appeal, Smith's assertion of laches suggests that Old Republic was tardy in notifying him that it would not pay for the visit to Dr. Matsen. On the contrary, immediately upon receiving information concerning the basis for

Dr. Johnson's referral to Dr. Matsen, Doerr notified Smith in writing that Old Republic would not authorize or pay for the visit with Dr. Matsen or the travel expenses associated therewith. Furthermore, Doerr's office telephoned Smith the following day to notify him that the visit with Dr. Matsen was not authorized. There was no delay on Old Republic's part which would justify the application of the doctrine of laches.

¶34. Accordingly, we hold that the Workers' Compensation Court did not err in rejecting Smith's claim that the doctrine of laches precludes Old Republic from denying liability for Smith's July 25, 1997 consultation with Dr. Matsen.

Issue 3.

¶35. *Whether the Workers' Compensation Court erred in denying Smith's claim against Old Republic for medical benefits and travel expenses in connection with the July 25, 1997 consultation in Seattle.*

¶36. The Workers' Compensation Court determined that Smith had the burden of proving that the consultation with Dr. Matsen, and the need to travel to Seattle for that consultation, were medically reasonable. The court concluded that Smith failed to sustain his burden, thus he is not entitled to medical benefits or travel expenses in connection with the July 25, 1997 consultation with Dr. Matsen.

¶37. Smith argues that the Workers' Compensation Court erred in denying his claim because the settlement agreement does not require that he provide statements of medical necessity or emergency. He contends that the denial of his claim compromises his freedom to choose his own physician. Smith also argues that in his initial conversation with Doerr on July 21, 1997, Doerr agreed to pay Smith's travel expenses to Seattle and that this constituted a verbal contract which Doerr subsequently breached.

¶38. Old Republic, on the other hand, does not dispute that Smith reserved the right to future medical and hospital benefits at the time he settled his claim in December 1992. Rather, it is Old Republic's position that it is liable only for reasonable and necessary medical expenses arising from the injuries which were sustained by Smith

in the July 14, 1990 accident.

**¶39. The benefits which an injured worker is entitled to receive are determined by the law in effect at the time of the injury.** *Kraft v. Flathead Valley Labor & Contr.* **(1990), 243 Mont. 363, 367, 792 P.2d 1094, 1096 (citing** *Young Motor Co. v. Div. of Workers' Comp.* **(1985), 219 Mont. 1, 3, 710 P.2d 58, 59). Since Smith's injury occurred on June 14, 1990, Smith's benefits must be determined by reference to the provisions of the Workers' Compensation Act of 1989, specifically § 39-71-704, MCA. This section provides, in pertinent part:**

Payment of medical, hospital, and related services--fee schedules and hospital rates. (1) In addition to the compensation provided by this chapter and as an additional benefit separate and apart from compensation, the following must be furnished:

(a) After the happening of the injury, the insurer shall furnish, without limitation as to length of time or dollar amount, *reasonable services by a physician or surgeon*, reasonable hospital services and medicines when needed, and such other treatment as may be approved by the department *for the injuries sustained*.

. . .

(c) The insurer shall reimburse a worker for *reasonable* travel expenses incurred in travel to a medical provider for treatment of an injury pursuant to rules adopted by the department.

Section 39-71-704, MCA (1989) (emphasis added).

**¶40. Therefore, Smith had the burden of proving that the July 25, 1997 consultation with Dr. Matsen was medically reasonable and was related to the injuries he sustained in his 1990 accident.** *See Dumont v. Wickens Bros. Const. Co.* **(1979), 183 Mont. 190, 201, 598 P.2d 1099, 1105-06. Smith has failed to meet this burden.**

**¶41. It is clear from a review of the record that Dr. Johnson's referral to Dr. Matsen for the July 25, 1997 consultation was not based upon a diagnosis that Smith had thoracic outlet syndrome, but was solely to accommodate Smith's request that he be evaluated for that condition and only after Smith had rejected Dr. Johnson's**

recommendation that Smith consult with one of two knowledgeable and qualified physicians in Billings regarding thoracic outlet syndrome. Moreover, in his deposition introduced at trial, Dr. Johnson testified that not only had he never diagnosed Smith with thoracic outlet syndrome, he had never considered such a diagnosis during the course of his evaluation and treatment of Smith. Neither was there any indication in Dr. Johnson's records or his deposition testimony to substantiate that the referral to Dr. Matsen was related to the injuries Smith sustained in the 1990 accident.

¶42. In his own testimony at the hearing in this matter, Smith states:

Q. Prior to you mentioning [thoracic outlet syndrome] to Dr. Johnson on May 8, 1997, Dr. Johnson had never indicated to you that that was a possible diagnosis of your condition, did he?

A. No, sir . . . .

. . .

Q. Did Dr. Matsen in his subsequent evaluation of you on the 25th of July diagnose that you had the condition known as thoracic outlet syndrome?

A. He did not.

Hence, Smith has failed to sustain his burden of proof in establishing that the visit to Dr. Matsen was reasonable and necessary. At best, Smith's evidence established that the only basis for the referral was his own desire to be evaluated for thoracic outlet syndrome, a condition which was never diagnosed by either Dr. Johnson or Dr. Matsen.

¶43. Smith also contends that the evidence supports a finding that he is entitled to payment for the aggravation of his preexisting conditions because he was returned to work as a forklift driver prior to his reaching maximum medical healing. This latter question has nothing whatsoever to do with the controversy in the case before us on appeal. Here, the controversy arises out of the refusal of Old Republic to pay for the July 25, 1997 consultation with Dr. Matsen and the travel expenses related thereto. Payment for the aggravation of Smith's preexisting conditions was not an issue raised

in or considered by the Workers' Compensation Court and we will not address it on appeal. *Sherrodd*, 249 Mont. at 285, 815 P.2d at 1137.

**¶44. Accordingly, we hold that there is substantial credible evidence in the record to support the Workers' Compensation Court's determination that the July 25, 1997 consultation with Dr. Matsen was not medically reasonable. Consequently, the Workers' Compensation Court did not err in denying Smith's claim against Old Republic for medical and travel expenses in connection with the July 25, 1997 consultation with Dr. Matsen.**

**¶45. Affirmed.**

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER