No. 89-260

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

GRANT BAKER and ELMA L. BAKER

Plaintiffs and Appellants

-vs-

ARTHUR L. BAILEY and EDNA L. BAILEY,

Defendants and Respondents.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James B. Wheelis, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Rex Palmer, Missoula, Montana

For Respondent:

David B. Cotner; Boone, Karlberg & Haddon, Missoula,
Montana

Submitted on Briefs: October 25, 1989

Decided: December 1, 1989

Filed: '89 DEC 1 AM 10 45 ED SMITH, CLERK MONTANA SUPREME COURT

Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Grant and Norma Baker (Bakers) appeal from a judgment of the District Court of the Fourth Judicial District, Missoula County. The District Court, sitting without a jury, found the Bakers liable for breach of the covenant of good faith and fair dealing and further found their claims for damages arising out of breach of contract should not be fully granted. We reverse in part and affirm in part.

The issues on appeal are:

1. Whether the District Court erred when it found the Bakers in breach of contract and the implied covenant of good faith and fair dealing.

2. Whether the District Court erred when it found that the Bakers are limited to the recovery of less than one-half the sums claimed under the contract.

3. Whether the District Court abused its discretion when it found that both parties should be responsible for their own attorney fees.

In June of 1976, Arthur and Elma Bailey moved a mobile home onto property owned by their daughter and son-in-law. With their permission, the Baileys hooked onto the water line which serviced their daughter's home and installed a pipeline which would provide water for their trailer.

Approximately six years later, in the spring of 1982, the Bailey's daughter and son-in-law made the decision to sell their residence and the surrounding property. Because they were concerned about taking care of their parents, however, they transferred one acre of the property to the Baileys. This one acre surrounded the mobile home. The remaining property, consisting of forty-five acres, was sold to the Bakers.

2

In order to insure that the Bailey's continued to have access to water, a Water Well Use Agreement was prepared. Mrs. Baker was concerned about future ownership of the one-acre plot. In particular, she was worried that "a bunch of hippies" would move in next to her and consequently she wanted some control over the type of person who may, in the future, buy the Bailey's land. In order to address this concern, the well agreement specifically provided that the right to use water would only extend to the Baileys. In the event the Baileys conveyed the property, the Bakers were under no obligation to provide the new owners with water.

Despite the plain language used in the agreement, the Baileys believed that although not specifically set forth, the Bakers would transfer the right to use the water well to a subsequent "reasonable purchaser" of the Bailey property. The language of the agreement, according to testimony of both the Baileys and the Bakers, was included for the purpose of addressing Mrs. Baker's concern over potentially undesirable neighbors. This purpose was not, however, articulated within the contract.

In addition to the water well use agreement, the Bakers, at the time of purchase, asked for and received a right of first refusal in the event the Baileys received an offer to purchase their property. If an offer was received, the Baileys were to notify the Bakers of the offer in writing. The Bakers would then have the opportunity to exercise their "right of first refusal" within fifteen days of the offer.

Following sale of the land, the Bakers and Baileys lived next to one another and in fact became friends. The Baileys, however, decided to move to Butte, Montana, in the spring of 1984. On June 30, 1984, they executed a standard form listing contract with a local realty company. Under the terms of the listing, the Baileys represented that the property would

3

be sold with "shared well water." Based upon the realtor's valuation of the property with water, it was listed for $47,500.00.

Shortly after the decision was made to sell the property, the water system developed several problems. As a result of these problems pressure in the line was reduced and the Baileys were unable to obtain sufficient water to meet their needs. As a result, they found it necessary to bring water to their residence in plastic jugs.

The Bakers were not as significantly affected by the problems. The Bakers always had sufficient water. In fact, during the entire period the Baileys were deprived of water, the Bakers had enough water to irrigate their lawn. Despite the fact this use adversely affected the Baileys' water supply, the Bakers refused to reduce their consumption. This problem persisted until August when the water system was finally repaired.

After the problems with the water well surfaced, the Bakers informed the Baileys that they would not share the water supply with any new purchaser. Consequently, the property would have to be sold without access to water from the well.

The Baileys searched for alternative sources of water, but unfortunately none was available. They approached the Bakers and offered to purchase joint use of the well. This offer was refused.

Recognizing that they would not be able to provide water for the property, the Baileys realized that the property was virtually without value. They, therefore, agreed to sell it for $8,000.00, which was the fair market value of the trailer and other improvements on the land.

After the Baileys made the decision to accept the $8,000.00 offer, they gave the Bakers notice of its terms in

compliance with the right of first refusal provisions in the contract. On August 20, 1984, the Bakers exercised their option and purchased the property for $8,000.00. The transaction was closed on September 10, 1984. At that time, the Bakers acquired the Baileys' one-acre parcel which, if supplied with water, allegedly could be marketed for $40,000.00 - $47,500.00.

The Bakers then filed a lawsuit to recover for the value of a refrigerator and certain unpaid expenses which they felt were owed by the Baileys. The Baileys, on the other hand, counterclaimed and sought damages for breach of the Water Well Use Agreement. The District Court found the Bakers in breach of contract and in breach of the implied covenant of good faith and fair dealing. It also found the Baileys liable for less than one-half of the electrical expenses of the well. Following this judgment, the Bakers appealed the lower court's findings in regard to their liability for breach of contract and the Baileys' limited liability for expenses incurred on the water well.

I

The facts of this case present a classic parol evidence problem. The parol evidence rule, briefly stated, requires that in the absence of fraud, duress, or mutual mistake, all extrinsic evidence must be excluded if the parties have reduced their agreement to an integrated writing. Under this rule, all prior and contemporaneous negotiations or understandings of the contract are merged, once that contract is reduced to writing. Williston on Contracts, Third Edition § 631.

As this case illustrates, application of the rule can work to create harsh results. However, the policies behind the rule compel its consistent, uniform application. Commercial stability requires that parties to a contract may rely

5

upon its express terms without worrying that the law will allow the other party to change the terms of the agreement at a later date.

The Baileys maintain that all of the parties to the Water Well Use Agreement, shared a common understanding that the Bakers would continue to share the well water with subsequent purchasers provided that the purchasers were acceptable to the Bakers. This contention may be true; however it is not found within the terms of the contract.

The Water Well Use Agreement is very explicit concerning the rights and obligations of the parties. Its terms provide: "it being specifically understood that this Agreement is solely for the benefit of [the Baileys] and shall terminate in the event [the Baileys] no longer occupy [the land]." It further provides that "it is the intent of the parties to fully set forth their understanding concerning the utilization of the domestic water supplies for the respective tracts . . ." There are no terms within the contract which state that the Bakers will provide water to subsequent "reasonable" purchasers.

Therefore, the fact there may have been further oral understandings between the parties is not admissible. The language of the Water Well Use Agreement is clear. Where the language of a written contract is clear and unambiguous, there is nothing for the court to construe. Rather, the duty of the court is simply to apply the language as written to the facts of the case and decide the case accordingly. The lower court's reliance upon evidence of the parties' oral negotiations was therefore in error, and there was no breach of contract.

In order to prove that a party acted unreasonably in violation of the implied covenant of good faith and fair dealing, one must show as an element there was a breach of

6

the express terms of the contract. Nordlund v. School District (1987), 44 St.Rep. 1183, 738 P.2d 1299. We have concluded that the Bakers did not breach the terms of the Water Well Use Agreement and accordingly, there was no violation of the covenant of good faith and fair dealing even if all other elements of the violation were met.

II

At trial, the Bakers, like the Baileys, sought damages for breach of the Water Well Use Agreement. They maintained that the Baileys failed to pay one-half of the electrical and maintenance expenses of the well. The Baileys, on the other hand, argued that they only owed the Bakers for electrical expenses incurred during the months of September through May of 1984.

The Water Well Use Agreement specifically provided that the two parties would equally share all of the electrical bills and maintenance expenses incurred through their joint use of the pump. The sum of the electrical expenses attributable for the year preceding the sale of the property is $218.03. The total cost of repairs on the pump equalled $1,572.85. Bakers maintain that pursuant to the terms of the contract the Baileys are responsible for one half of these expenses, or $895.42.

The Baileys maintain that they are only liable for the electrical expenses incurred through the operation of the pump for the months of September 1983 through May of 1984. During the months of June, July and August, 1984, the water system was not in working order and consequently the Baileys were deprived of water. The Baileys maintain, and the lower court agreed, that this deprivation was a partial failure of consideration and that as a result the Baileys would be excused from their duty to pay their share of the electrical

expenses due under the contract for the months of June, July and August.

The lower court also held that the Baileys did not owe the Bakers any money for the expenses incurred through the repair of the water line. The repair expense was incurred after the Bakers were notified of their right to exercise their option to purchase the property. Four days after completion of the work, the Bakers exercised the right and purchased the property. The District Court therefore found that all benefit derived from the repairs was realized by the Bakers, and, accordingly, the Baileys had no responsibility to pay a portion of the repair expense.

The District Court found the Baileys were only liable for expenses incurred by the Bakers for electricity which operated the pump during the months of September through May. The amount owed by the Baileys equaled $60.00. However, the court also found, and the Bakers admit, that the Bakers owed the Baileys $225.00 for propane which was left on the property after it was sold. Therefore, the amount owed by the Bakers to the Baileys, was offset by the $60.00 owed on the Water Well Use Agreement. Accordingly, the Bakers owed the Baileys $165.00 and the Baileys owed nothing under the contract.

We find the District Court's findings on this issue were reasonable and were not an abuse of discretion. They were supported by the evidence and, thus, on this issue the lower court is affirmed. Let the judgment be entered accordingly for $165.00.

III

As a final issue, the Bakers assert that the lower court erred by not awarding them attorney fees. In Montana the general rule is that attorney fees are awarded only where a statute or contract provides for their recovery.

8

Northwestern National Bank of Great Falls v. Weaver-Maxwell, Inc. (1986), 43 St.Rep. 1995, 729 P.2d 1258.

The Water Well Use Agreement provided that ". . . in the event of litigation . . . reasonable attorney fees _may_ be awarded . . ." (Emphasis added.) The lower court determined that the term "may" allowed it to award attorney fees in its discretion. Since both parties were successful in the lawsuit, it declined to award fees to either party.

The District Court correctly construed the terms of the agreement. The contract by its terms left the award of fees to the discretion of the court. The fact that the Bakers were partially unsuccessful in their claims against the Baileys does not support an award of attorney fees. The judgment of the lower court is therefore reversed and remanded for proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

9