No. 90-347

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

**FILED**

SHERRODD, INC.,

JUL 23 1991

Plaintiff and Appellant,

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

-vs-

MORRISON-KNUDSEN COMPANY, SCHLEKEWAY CONSTRUCTION INC., COP CONSTRUCTION INC., and SAFECO INSURANCE COMPANY OF AMERICA,

Defendants and Respondents.

---

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Loren H. Torkelson and Frank Richter; Richter & Torkelson, Billings, Montana.

For Respondent:

Urban L. Roth and James A. Poore; Poore, Roth & Robinson, Butte, Montana. W. Anderson Forsythe; Moulton, Bellingham, Longo & Mather, Billings, Montana.

---

Submitted on briefs:   May 16, 1991

Decided:   July 23, 1991

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

This action arises out of a construction contract on which plaintiff Sherrodd, Inc., was a subcontractor. Sherrodd, Inc., appeals from a summary judgment entered for defendants by the District Court for the Thirteenth Judicial District, Yellowstone County. We affirm.

The issue is whether the entry of summary judgment for defendants was proper.

Sherrodd, Inc. (Sherrodd), is a family-owned Montana construction corporation. Sherrodd subcontracted with COP Construction (COP) to do certain earth-moving work involved in the construction of fifty family housing units in Forsyth, Montana, for the Army Corps of Engineers. COP itself was a subcontractor to the general contractors Morrison-Knudsen Company, Inc. (Morrison-Knudsen), and Schlekeway Construction, Inc. (Schlekeway). Safeco Insurance Company of America (Safeco) provided COP's payment bond on the job.

Sherrodd contends that while its officer William Sherrodd was examining the building site in preparation for submitting a bid on this project, a representative of Morrison-Knudsen told him that there were 25,000 cubic yards of excavation to be performed on the job. It claims that its bid of $97,500 on the subcontract was made in reliance on that representation, based on $3.90 per cubic yard for 25,000 cubic yards. Morrison-Knudsen denies that its representative made any such statement to William Sherrodd.

Sherrodd's bid, and, in turn, COP's bid including Sherrodd's bid, were submitted and accepted. Sherrodd began work before a written contract was signed. While performing the earthwork, Sherrodd discovered that the quantity of work far exceeded 25,000 cubic yards.

The written contract between Sherrodd and COP provided that Sherrodd would perform earthwork in the quantity "LS" for the consideration of $97,500. The parties agree that the letters "LS" mean lump sum. Sherrodd contends that its officers signed the contract, even though by then they knew that the job involved more than 25,000 cubic yards of earthwork, because a COP officer threatened to withhold payment for work already done unless the contract was signed. Sherrodd further contends that the COP officer verbally represented that a deal would be worked out wherein Sherrodd would be paid more than the sum provided for in the contract. COP's position is that it only agreed to assist Sherrodd in presenting a claim for additional compensation to the Army Corps of Engineers, based on differences in the moisture content of the soil from that stated in the bid proposal. That was done, but the claim was denied.

In its "Standard Subcontract Provisions," the contract entered between Sherrodd and COP also provided that

> the Subcontractor has, by examination, satis-
> fied himself as to the . . . character, quan-
> tity and kind of materials to be encountered
> . . . No verbal agreement with any agent
> either before or after the execution of this

3

> Subcontract shall affect or modify any of the terms or obligations herein contained and this contract shall be conclusively considered as containing and expressing all of the terms and conditions agreed upon by the parties hereto. No changes . . . shall be valid . . . unless reduced to writing and signed by the parties hereto.

Sherrodd was paid the $97,500 provided for in the contract. It brought this suit to set aside the price provisions in the contract and to recover quantum meruit plus tort damages. Its legal theories were fraud, both actual and constructive, and breach of the covenant of good faith and fair dealing. Defendants moved for summary judgment, which was granted based on the parol evidence rule regarding modification of written contracts.

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. The District Court held that, under the parol evidence rule, Sherrodd could not introduce evidence of the alleged oral misrepresentations by either the Morrison-Knudsen representative or the COP officer. Therefore, it concluded that even taking the evidence in the light most favorable to Sherrodd, summary judgment for defendants was proper.

The parol evidence rule is codified in Montana statutes. Section 28-2-904, MCA, provides that:

> The execution of a contract in writing, whether the law requires it to be written or not,

> supersedes all the oral negotiations or stipu-
> lations concerning its matter which preceded
> or accompanied the execution of the instru-
> ment.

Section 28-2-905, MCA, provides that when an agreement has been reduced to writing by the parties, there can be no evidence of the terms of the agreement other than the contents of the writing except when a mistake or imperfection of the writing is claimed or when the validity of the agreement is the fact in dispute.

Although it mentions mutual mistake in its brief to this Court, Sherrodd did not rely on that theory in the proceedings below, as evidenced in the pretrial order and in the District Court's memorandum on the summary judgment. We will not consider on appeal a theory not raised at the trial court level. Morse v. Cremer (1982), 200 Mont. 71, 81, 647 P.2d 358, 363.

A further exception is made to the parol evidence rule when fraud is alleged. Section 28-2-905(2), MCA. However, that exception only applies when the alleged fraud does not relate directly to the subject of the contract. Where an alleged oral promise directly contradicts the terms of an express written contract, the parol evidence rule applies. Continental Oil Co. v. Bell (1933), 94 Mont. 123, 133, 21 P.2d 65, 67. Accord, Superior Oil Company v. Vanderhoof (D. Mont. 1969), 297 F.Supp. 1086.

Here, any reliance on the alleged fraudulent statement of the Morrison-Knudsen representative is contradicted by the terms of the written contract that Sherrodd has, "by examination, satisfied

5

himself as to the . . . character, quantity and kind of materials to be encountered." The contention that the $97,500 covered only 25,000 cubic yards of earthwork contradicts the terms of the written agreement that all "negotiations and agreements" prior to the date of the contract are merged in the writing and that the work to be done is "lump sum." We conclude that the parol evidence rule applies. Because the written agreement supersedes all previous oral agreements, the rule prohibits admission of any evidence of the representation by the Morrison-Knudsen representative.

Next we consider Sherrodd's claim that COP officers induced Sherrodd officers to sign the contract with the promise that more money would be paid than the contract provided. Section 28-2-1602, MCA, provides that a written contract may be altered only by a subsequent contract in writing or by an executed oral agreement. Also, Sherrodd's subcontract provided that "No changes . . . shall be valid . . . unless reduced to writing and signed by the parties hereto." As the District Court noted, there is no allegation of a subsequent contract in writing, and if there had been an executed oral agreement to pay additional sums for the work, there would have been no reason for this lawsuit.

Because of the inadmissibility of Sherrodd's evidence as to alleged misrepresentations, the claim of breach of the covenant of good faith and fair dealing also fails. There is no allegation of any violation of the express terms of the written contract, as

6

would be required in this arms-length contract under our opinion in Story v. City of Bozeman (1990), 242 Mont. 436, 791 P.2d 767.

As we have stated,

> Commercial stability requires that parties to a contract may rely upon its express terms without worrying that the law will allow the other party to change the terms of the agreement at a later date.

Baker v. Bailey (1989), 240 Mont. 139, 143, 782 P.2d 1286, 1288.

The parol evidence rule is the public policy of Montana and it is clearly established by statute and the decisions of this Court. If this public policy and rule is not upheld, contracting parties that include lawful provisions in written contracts would be under a cloud of uncertainty as to whether or not their written contracts may be relied upon. The public policy and law does not permit such uncertainty to occur.

We conclude that the compensation of Sherrodd is governed exclusively by the written contract and that Sherrodd's claims are barred under the parol evidence rule. We hold that the District Court did not err in granting summary judgment for defendants.

Affirmed.

_____
Chief Justice

7

We concur:

_John Conway Harrison_

_Karla M. Gray_

_R. C. McDonough_

_Fred J. Weber_

_____

_____

                    Justices

Justice Terry N. Trieweiler dissenting.

I dissent from the opinion of the majority.

If the facts are as alleged by the plaintiff (and for purposes of this proceeding we must assume that they are), then the result of this case is that no party can be held accountable for its fraudulent conduct so long as it is in a sufficiently superior bargaining position to compel its victim to sign a document relieving it of liability.

The facts, as alleged by the plaintiff, offend any reasonable sense of fairness. No court should be so bound by a 58-year-old precedent that it cannot adapt to circumstances such as those presented in this case.

The plaintiff was informed by Lou Castino, the construction manager for Schlekeway and Associates, that the project he was being asked to bid on involved moving 25,000 cubic yards of dirt. It was based on that information that he submitted his bid. It was based on his bid that he was given an oral request to proceed with the work.

After commencing work on the project, plaintiff realized that the amount of earth that had to be moved greatly exceeded 25,000 cubic yards, and was actually more than twice that amount. He had conversations with representatives of both COP Construction and Schlekeway and Associates, during which it was agreed that the amount of work to be performed would be recalculated, and during which the defendants agreed to compensate plaintiff on the basis

of the actual amount of work done, rather than the price which was originally agreed upon.

By May 22, 1985, plaintiff had already been working on the project and had incurred substantial expenses and obligations to his own employees. He had not been paid for his work, and was still operating without a written agreement. It was on that date that he was requested by COP Construction's superintendent to sign the written contract which the defendants now assert as a bar to his cause of action. He was advised that if he did not sign the agreement he would not receive the progress payment in the amount of $70,372.80 which was due. Without the progress payment he would not have been able to pay his current expenses and payroll.

He was further advised that he would not be bound by the terms of the written agreement, but that he would be paid for the actual work done at the rate of $3.90 per cubic yard.

Thereafter, the amount of earth work to be done was recalculated at approximately 50,000 cubic yards. On that basis, plaintiff tried to recover the full amount due, but payment was refused. Instead, the defendants raised the written agreement as a bar to any further payment to the plaintiff.

Because of the defendants' failure to pay the plaintiff the additional $100,000 to $120,000 which they owed him, plaintiff's business lost its ability to borrow money, lost its bonding, and was unable to complete additional contracts because of a lack of operating capital. Plaintiff was unable to bid on contracts that

required bonding, and completely lost its ability to carry on business as it had in the past. As a direct result of the defendants' failure to pay the amounts due, plaintiff was unable to continue in business as a construction company, which it had done for the previous 30 years.

If the plaintiff's allegations are true, then defendant COP Construction Company's conduct, at least, satisfies the elements of fraud. See Poulsen, et al. v. Treasure State Industries, 192 Mont. 69, 626 P.2d 822 (1981). COP's employees represented to the plaintiff that he would be paid for the full amount of work done, regardless of the written terms of the contract. That representation was untrue and material, and COP's superintendent either knew it was untrue or had no reason to believe that it was true. COP Construction intended that the plaintiff act in reliance upon that representation. Plaintiff did rely on it, and had no reason to believe that COP's superintendent would mislead him. As a result, plaintiff has sustained the total loss of his business and substantial damages.

The majority has affirmed the dismissal of plaintiff's claim based solely on the parol evidence rule found at § 28-2-904, MCA. That rule provides that a written agreement supersedes all oral negotiations which preceded or accompanied the execution of the instrument. Furthermore, § 28-2-905, MCA, provides that the terms of a written agreement cannot be proven by evidence other than what is contained in the written document.

11

However, an important exception is found at § 28-2-905(2), MCA, which provides, in relevant part, as follows:

This section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates . . . or other evidence to explain . . . fraud.

In addition, § 28-2-1611, MCA, provides as follows:

When, through fraud or a mutual mistake of the parties or a mistake of one party while the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons in good faith and for value.

(Emphasis added.)

In this case, in spite of the exceptions to the parol evidence rule set forth by statute above, the majority has chosen to rely on this Court's 58-year-old decision in Continental Oil v. Bell, 94 Mont. 123, 133, 21 P.2d 65, 68 (1933). In that case, this Court held that parol evidence of fraud was not admissible when the oral promise directly contradicts a provision of the written contract.

I would not follow this Court's previous decision in Continental Oil for two reasons:

1. That decision made no specific reference to the statute which is controlling, and yet adds qualifications to the statute which were not included by the legislature. The legislature provided that parol evidence could be offered to establish that a contract was induced by fraud. It made no exception where evidence

12

of the fraudulent oral agreement contradicted a term in the written agreement.

2. To follow the decision in <u>Continental Oil</u> creates a terrible injustice, rewards fraudulent parties who are in a superior bargaining position, and totally defeats the purpose for which the fraud exception was provided to the parol evidence rule.

Based on this decision, and our previous decision in <u>Continental Oil</u>, all that a fraudulent party needs to do in order to avoid accountability for fraudulent conduct is to obtain the signature of his defrauded victim on a written agreement.

The majority expresses concern that but for this decision general contractors would not be able to rely on written agreements with their subcontractors. However, general contractors who induce subcontractors to enter into a written agreement by fraudulent representations should find no security in the piece of paper which resulted from their culpable conduct. Furthermore, a justice system worth its salt should have equal compassion for Montana's many subcontractors who, while operating without the benefit of legal advice, sign whatever is necessary in order to keep their operations afloat and their crews at work. When what they have signed results from an obvious misrepresentation and causes them the kind of substantial damages and hardship that have resulted in this case, those subcontractors are entitled to the protection of Montana's laws and its courts.

13

For these reasons, I dissent from the majority opinion. I would reverse the judgment of the District Court and remand for a jury trial to determine the merits of the plaintiff's claim. That is really all the protection that Montana's general contractors need.

_____
Justice

I concur with the foregoing dissent of Justice Trieweiler.

_____
Justices