No. 91-454

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF

SHIRLEY ANN HARRIS,

      Petitioner and Respondent,

  and

RICHARD THOMAS HARRIS,

      Respondent and Appellant.

FILED

MAR 26 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Kevin T. Sweeney, Sweeney & Healow,
Billings, Montana.

    For Respondent:

        Linda L. Harris, Harris Law Firm,
Billings, Montana.

Submitted on Briefs:  January 16, 1992

Decided:  March 26, 1992

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On May 16, 1990, Shirley Ann Harris petitioned for dissolution of marriage in the Thirteenth Judicial District Court in Yellowstone County. The District Court dissolved her marriage to Richard Thomas Harris, distributed the marital estate, and awarded Shirley maintenance in the amount of $800 per month. The court denied Richard's motion for a new trial or amendment of the court's findings and judgment. Richard appeals. We affirm.

The issues are:

1. Did the District Court err when it found that Shirley was permanently disabled and had no future ability to work?

2. Did the District Court err when it concluded that the antenuptial agreement between the parties did not preclude an award of maintenance?

3. Did the District Court err when it found that Shirley's needs justified $800 per month in maintenance?

4. Did the District Court err when it found that Richard could afford to pay $800 per month in maintenance?

Richard and Shirley were married on November 23, 1984. Both had been married previously. On that same day, they had executed an antenuptial agreement that essentially renounced any claims each party might have against the previously acquired property of the other in the event of a dissolution of their marriage. The marriage produced no children.

Early in the marriage Shirley developed bladder cancer. She underwent urostomy surgery, a procedure that involves removal of the cancerous bladder and construction of a replacement bladder from the patient's own tissue. The new bladder does not perform as well as the old one, and consequently she must urinate frequently and is susceptible to bladder infections. The Social Security Administration has determined that she is permanently and totally disabled. At the time of trial she was 54 years old.

Richard is a semiretired real estate broker. He had accumulated substantial assets prior to the marriage. At the time of trial he was 63.

On June 7, 1991, the District Court issued its findings of fact and conclusions of law. The court dissolved the marriage, distributed the property of the parties according to the antenuptial agreement, and awarded Shirley $800 per month as maintenance. The court also awarded Shirley reasonable attorney fees.

After the District Court issued a final decree of dissolution on June 27, 1991, Richard moved for a new trial or amendment of the findings and judgment. Richard argued that the court had erred in (1) calculating his income and expenses; and (2) awarding maintenance in contravention of the antenuptial agreement. The court denied Richard's motion on July 30, 1991. Richard appeals.

## I

Did the District Court err when it found that Shirley was permanently disabled and had no future ability to work?

Richard argues that the court erroneously admitted hearsay evidence by allowing Shirley to testify that her doctor had told her she was totally disabled and unable to work. He contends that without this hearsay evidence, the record contains no credible evidence from which the District Court could find that Shirley was disabled and unable to work. We cannot agree with this characterization of the record.

First, the District Court did not admit hearsay evidence. The key portion of the transcript reads as follows:

Q. Do you anticipate you will ever be able to work?

A. [By Shirley] No.

Q. Have you been so advised by your physician?

MR. SWEENEY: Objection, Your Honor. Hearsay.

THE COURT: Overruled.

Q. <u>Are you presently living in Columbia, Missouri</u>?

[Emphasis added.]

After the court overruled Richard's objection, Shirley's attorney switched topics and never returned to the subject of what Shirley's doctor told her about whether she could work. Thus, Richard's hearsay argument lacks merit.

Second, the record contains other evidence from which the District Court could find that Shirley was unable to work. Early

4

in her direct examination, Shirley testified without objection that the Social Security Administration had determined that she was totally disabled. She also expressed her own opinion that she was unemployable. There was no objection to that opinion, and no qualified opinion to the contrary.

In appeals from judge-made findings of fact, we defer to the trial court's opportunity to listen to and observe the witnesses as they testify under oath. The standard of review for all judge-made findings of fact is whether they are "clearly erroneous" within the meaning of Rule 52, M.R.Civ.P. *Walden v. State* (Mont. 1991), 818 P.2d 1190, 48 St.Rep. 893. Based on its assessment of the weight of the evidence, the court found that this 54-year-old woman with an artificial bladder who was classified as totally disabled by the Social Security Administration could not work. This was not "clearly erroneous."

We hold that the District Court did not err when it found that Shirley was permanently disabled and had no future ability to work.

## II

Did the District Court err when it concluded that the antenuptial agreement between the parties did not preclude an award of maintenance?

Richard argues that the court's maintenance award was erroneous in light of the 1984 antenuptial agreement between the parties. Generally, this agreement indicates a waiver by each party of any claim to the previously acquired property of the other

5

in the event of a dissolution of their marriage. The District Court actually followed this scheme in its distribution of the marital estate.

Richard, however, contends that the court did not go far enough and that the agreement also prohibited any future award of maintenance if the payment came from income derived from that property. He asserts that Shirley waived her right to maintenance in this agreement and that the District Court was bound by its terms. We reject both parts of this argument.

The relevant portions of the agreement provide as follows:

> 3. [Shirley] further agrees that in the event of the dissolution of marriage or separation of parties or the death of [Richard], the aforementioned property, or the proceeds therefrom, shall be excluded from the determination of the amount of specific property [Shirley] shall be entitled to receive by reason of her marriage to [Richard]. [Richard's] property shall not be considered either directly or indirectly in any determination of the nature and extent of her marital rights.

> . . . .

> 7. After the solemnization of the marriage between the parties, property acquired by a party which is intended by that party to be separate property may be put in the separate name of the acquiring party and such property shall be the separate property of the acquiring party. Each party agrees in consideration of said contemplated marriage that each waives, releases and relinquishes to the other party all right to the use and control of the other party's separate property and estate and income therefrom. . . . Each party relinquishes or agrees to relinquish any and all claims to or for the separate property of the other party in the event of a dissolution of marriage or separation of the parties. Each party also specifically agrees that in the event of the dissolution of marriage or separation of the parties, each party's separate property shall be excluded from the

6

determination of the amount of specific property each
would be entitled to receive from the other by reason of
his or her marriage to the other.

Richard suggests that by considering his net worth in awarding maintenance, the court "indirectly" considered his property in determining Shirley's marital rights, and that this contravenes the agreement.

We disagree. The quoted language deals only with property division. It is silent on the question of maintenance. In *Baker v. Bailey* (1989), 240 Mont. 139, 143-44, 782 P.2d 1286, 1288, we said "[w]here the language of a written contract is clear and unambiguous, there is nothing for the court to construe." Because this contract is clear and unambiguous, we decline Richard's invitation to construe the word "indirectly" as synonymous with "maintenance." The agreement by its terms does not expressly prohibit a maintenance award.

Additionally, at the time the parties executed the antenuptial agreement the law did not recognize maintenance waivers. In *Stefonick v. Stefonick* (1946), 118 Mont. 486, 167 P.2d 848, we considered an antenuptial agreement that purported to waive the wife's right to maintenance in the event of divorce. We held that that part of the agreement was void for being contrary to public policy. *Stefonick*, 167 P.2d at 854.

We recognize that the Uniform Premarital Agreement Act modified our holding in *Stefonick*, and that parties may now contract

7

for the "modification or elimination of spousal support." Section 40-2-605(1)(d), MCA. However, the Uniform Premarital Agreement Act is a product of the 1987 legislature, *see* ch. 189, 1987 Mont. Laws 316, and was not the law in 1984 when the parties executed the antenuptial agreement at issue in this case.

As the District Court pointed out:

> A careful review of the Ante-Nuptial Agreement discloses that it was not [intended] nor does it by implication, purport to be a waiver or release of any claim either party may have for spousal maintenance. It seems obvious that the agreement was drawn having in mind the decision of the Montana Supreme Court in *Stefonick v. Stefonick*, 118 Mont. 486, 500, 167 P.2d 848, wherein the Court held that a provision in an Ante-Nuptial Agreement providing that "The other party shall never be called upon to pay alimony, separate maintenance, cost of suit or any other expense incurred by the party bringing the action" was void as against public policy. It is clear that the drafter of the document was well aware of the *Stefonick* decision and purposely did not include in the agreement a provision which would be subject to being held as void in violation of public policy.

We agree with the District Court. Richard cannot argue now that the agreement contains by implication a provision that would have been void as contrary to public policy at the time the parties executed it.

We hold that the District Court did not err when it concluded that the antenuptial agreement between the parties did not preclude an award of maintenance.

### III

Did the District Court err when it found that Shirley's needs justified $800 per month in maintenance?

8

In addition to arguing that the court had no authority to award any maintenance at all, Richard also argues that the court awarded too much maintenance in light of the "short" six-year marriage of the parties. He asserts that the highest net income ever available to Shirley before the marriage was $855.80, that she has monthly Social Security income of $526.00, and that therefore the court should have awarded only $329.80 ($855.80 minus $526.00) in order to duplicate her premarital standard of living. The flaw in this contention is that it considers only the duration of the marriage.

Richard cites *In re Marriage of Lundvall* (1990), 241 Mont. 172, 786 P.2d 10, in support of his argument that the court's maintenance award was too high in light of the short duration of this marriage. In that case we said:

> While the duration of a marriage is a factor to be considered in connection with the award of maintenance, § 40-4-203, MCA, it is not an overriding factor so as to preclude consideration by the District Court of other equitable reasons set forth in the statute for the award of maintenance.

*Lundvall*, 786 P.2d at 12-13.

Duration is only one of the statutory factors we alluded to in *Lundvall*. The court must also consider, among other factors, "the financial needs of the party seeking maintenance," "the standard of living established during the marriage," and "the age and the physical and emotional condition of the spouse seeking maintenance." Section 40-4-203(2), MCA (emphasis added). Based on

9

these factors, the court found that Shirley's reasonable needs amounted to $1450. After reviewing the record we conclude that this finding was not "clearly erroneous."

We hold that the District Court did not err when it found that Shirley's needs justified $800 per month in maintenance.

## IV

Did the District Court err when it found that Richard could afford to pay $800 per month in maintenance?

Richard's final argument is that he no longer has sufficient wealth to pay $800 in maintenance and still meet his own needs. He asserts that he has annual expenses, excluding the maintenance award, of $20,350.92 and that his annual income is only $22,219.00. Under the court's maintenance award, his annual expenses will be $29,950.92. He cites § 40-4-203(2)(f), MCA, for the proposition that the court had to consider his ability to pay maintenance, and contends that he cannot pay annual expenses of $29,950.92 on an annual income of $22,219.00.

The District Court, however, found Richard's annual income to be considerably greater than $22,219.00. In his Rule 28 Statement, a financial summary prepared and submitted according to local court rules in dissolution cases in the Thirteenth Judicial District, Richard adjusted his gross annual income downward to reflect depreciation and payments on certain non-income producing properties. The court's memorandum accompanying its denial of Richard's motion for a new trial clearly indicates the court found

that allowing Richard to claim these deductions would distort his actual income. The District Court found that without these deductions the actual income which Richard had at his disposal was closer to $30,000 per year. There was substantial evidence to support that finding. We conclude that it was not clearly erroneous.

We hold that the District Court did not err when it found that Richard could afford to pay $800 per month in maintenance.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

11

March 26, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Kevin T. Sweeney
SWEENEY & HEALOW
1250 15th St. W., Suite 202
Billings, MT 59102

Linda L. Harris
HARRIS LAW FIRM
Main Plaza, 926 Main St., Suite 15
Billings, MT 59105

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy