No. 91-409

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

PATRICIA HANLEY,

       Plaintiff and Appellant,

  v.

SAFEWAY STORES, INC.,
SCOTT LANG, and DOUGLAS ROSSO,

       Defendants and Respondents.

FILED

AUG 2 1 1992

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Frank Davis, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

           Wade J. Dahood; Knight, Dahood, McLean
           & Everett, Anaconda, Montana

       For Respondent:

           James M. Ragain and Kyle A. Gray;
           Holland & Hart, Billings, Montana


Submitted on Briefs:  June 4, 1992

Decided:  August 21, 1992

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Plaintiff/appellant Patricia Hanley brought suit against Safeway and two of its security employees for alleged wrongful conduct committed during an interrogation which led to appellant's discharge from employment. The District Court granted respondents' motion for summary judgment on the grounds that various claims asserted by appellant were preempted by federal labor law. Appellant moved the District Court for a reconsideration. Following the denial of that motion, appellant brought this appeal. We reverse and remand.

The only issue before the Court is whether the District Court erred in granting summary judgment for respondents on the basis that appellant's claims were preempted by federal labor law?

Appellant was a member of the United Food and Commercial Workers Union Local #4-R in Butte and was an employee of respondent Safeway. At the time of appellant's discharge from employment, there was a collective bargaining agreement in effect between appellant's union and Safeway. Appellant was discharged by Safeway after 25 years of employment for allegedly violating their work rules regarding the proper procedure for recording customer sales. Apparently, the proper procedure to be followed when an impatient customer would leave the correct change for a purchase and then leave the store, was to finish the checkout in progress, then immediately record the money set aside as the next complete customer transaction. Appellant was aware of this procedure. In

2

the spring and summer of 1988, Safeway's security personnel conducted blind checker tests at the Butte store in which appellant was employed. The security personnel would leave the exact change for an item and then leave the checkstand without waiting for the sale to be rung through. Respondents allege that upon later checking the register tape it appeared that in seven out of eight such blind tests appellant failed to properly record the transactions.

The parties offer different versions of what transpired next. According to Safeway, appellant met with two of Safeway's security personnel, respondents Rosso and Lang, regarding the alleged improper handling of customer transactions. After some discussion with the security personnel, appellant wrote and signed a letter admitting that she failed on occasion to record customer transactions. In the letter, appellant indicated that she would set aside the money and use it at the end of her shift to make certain the till total came out correctly. Appellant denied appropriating any of the money for personal use. This letter also indicated that appellant's admission had "been written freely by me without any threats, promises or coercion and is the most truthful letter I can write."

Appellant's recollection of this event varies from that given by the security personnel. Appellant states that she was directed to a back room where the security personnel interrogated her concerning the alleged improper customer transactions. Appellant

3

denied the charges and attempted to leave the room but was forced by the security personnel to sit back down. Appellant alleges that she was threatened with criminal action, coerced to make a confession, and promised that if she did confess no further action would be taken. Appellant states that after being alone in the room for over an hour with the security personnel that they dictated a confession which she wrote down and then signed. The following day appellant was discharged. Appellant contends the signed confession was false.

Following her discharge, appellant contacted her local union president, Junie Best, who filed a grievance on behalf of appellant. Safeway denied the grievance. The Union never sought arbitration as provided for in the collective bargaining agreement.

Approximately a year and one-half after the discharge from employment, appellant brought suit against respondents in State District Court. On appeal, appellant argues that the suit brought in District Court was for damages resulting from false imprisonment, emotional distress, unlawful restraint, intimidation, employer misconduct, and slander. Upon motion of respondents, the District Court granted summary judgment indicating that the claims brought by appellant were preempted by federal law. Appellant brought this appeal contending that the claims were not preempted and that the District Court erred.

The only issue which this Court is addressing on appeal is whether the District Court erred in granting summary judgment for

4

respondents on the basis that appellant's claims were preempted by federal labor law.

A district court may grant summary judgment "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." Sherrodd, Inc. v. Morrison-Knudsen Co. (1991), 249 Mont. 282, 284, 815 P.2d 1135, 1136; Rule 56(c), M.R.Civ.P. Upon reviewing a grant or denial of a motion for summary judgment, this Court applies the same standard as the district court.

Respondents argue that appellant's state-law tort claims are preempted by § 301 of the Labor Management Relations Act of 1947 (LMRA), 61 Stat. 156, 29 U.S.C. § 185(a) [hereinafter § 301]. Section 301 of the LMRA provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The power of Congress to preempt state law is well established. This power is derived from the Supremacy Clause of Article VI of the Federal Constitution. Gibbons v. Ogden (1824), 9 Wheat 1, 6 L. Ed. 23. Congressional action of legislating and preempting state law in the field of labor relations is long established.

5

NLRB v. Jones and Laughlin Steel Corp. (1937), 301 U.S. 1, 57 S. Ct. 615, 81 L. Ed. 893. The rationale for federal preemption in the field of labor relations was explained by the United States Supreme Court in their decision in Teamsters v. Lucas Flour Co. (1962), 369 U.S. 95, 82 S. Ct. 571, 7 L. Ed. 2d 593, wherein the Court stated:

> The dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute. Comprehensiveness is inherent in the process by which the law is to be formulated . . . requiring issues raised in suits of a kind covered by § 301 to be decided according to the precepts of federal labor law.
>
> . . . .
>
> The importance of the area which would be affected by separate systems of substantive law makes the need for a single body of federal law particularly compelling. The ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace. State law which frustrates the effort of Congress to stimulate the smooth functioning of that process thus strikes at the very core of federal labor policy. With due regard to the many factors which bear upon competing state and federal interests in this area [citations omitted], we cannot but conclude that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules.

Lucas Flour (1962), 369 U.S. at 103-04.

It is clear from the foregoing that federal labor law must preempt state law to the extent that the state law pertains to an "area covered by the statute [§ 301]." However, it is equally clear that federal law does not preempt all state laws which might

6

be considered to be associated with labor law. The United States Supreme Court recently explained that:

> Congress did not state explicitly whether and to what extent it intended § 301 of the LMRA to preempt state law. In such instances courts sustain a local regulation "unless it conflicts with federal law or would frustrate the federal scheme, or unless the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." [Citation omitted.]

Allis-Chalmers Corp. v. Lueck (1985), 417 U.S. 202, 208-09, 105 S. Ct. 1904, 1910, 85 L. Ed. 2d 206, 213-14.

While Congress did not explicitly state to what extent § 301 preempted state labor law, the language in § 301 indicates that it applies to "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ." The United States Supreme Court has interpreted this language on numerous occasions and these decisions clearly set out general principles which clarify the extent of preemption under § 301.

In Lueck, the Court found that a state-law claim for the bad faith handling of an insurance claim was preempted by federal law because the matter was covered by the collective bargaining agreement. In a later decision, the Court succinctly described the test set out in Lucas Flour and applied in Lueck, stating that:

> [I]f the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is preempted and federal labor law principles - necessarily uniform

7

throughout the Nation - must be employed to resolve the dispute.

Lingle v. Norge Division of Magic Chef, Inc. (1988), 486 U.S. 399, 405-06, 108 S. Ct. 1877, 1881, 100 L. Ed. 2d 410, 418-19. Lingle involved a claim brought in state court in which an employee, working under a collective bargaining agreement, alleged that she had been discharged for exercising her rights under the state's workers' compensation laws. The Court in Lingle held that the state-law claim was not preempted by federal labor law. The United States Court of Appeals for the Seventh Circuit had earlier ruled that the state-law claim was preempted by § 301. The United States Supreme Court agreed with the Court of Appeals that "the state-law analysis might well involve attention to the same factual considerations as the contractual determination [under the CBA] of whether Lingle was fired for just cause." Lingle, 486 U.S. at 408. However, the Court did not agree with the Court of Appeals' "conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis." Lingle, 486 U.S. at 408. The state law remedy and claim were independent of the collective bargaining agreement for § 301 preemption purposes because the state-law claim could be resolved without construing the collective bargaining agreement. Lingle, 486 U.S. at 407. The Court concluded by noting that preemption under § 301:

> [M]erely ensures that federal law will be the basis
> for interpreting collective bargaining agreements, and
> says nothing about the substantive rights a State may

8

provide workers when adjudication of those right does not depend upon the interpretation of such agreements.

Lingle, 486 U.S. at 409.

This test has been followed in the Ninth Circuit Court of Appeals which stated in relation to federal preemption under § 301:

First, section 301 preempts state law claims which are founded on rights created by a collective bargaining agreement. [Citations omitted.] Second, section 301 preempts state law claims which are "substantially dependent on analysis of a collective bargaining agreement." [Citations omitted.]

Stikes v. Chevron USA, Inc. (9th Cir. 1990), 914 F.2d 1265, 1268.

It appears from the arguments in the briefs of both parties, that they accept as correct the foregoing discussion on the extent of federal preemption under § 301. It is the position of respondents that the claims raised in the State District Court suit by appellant are governed by the provisions of the collective bargaining agreement and are therefore preempted by federal law. Respondents argue that appellant should have sought remedy for the alleged wrongful acts by first exhausting all available sources of remedy under the collective bargaining agreement and then by filing a timely suit in Federal District Court.

Respondents contend that while appellant's complaint was artfully drafted so as to avoid any mention of the collective bargaining agreement, the gravamen of the complaint is that in discharging appellant, Safeway breached the collective bargaining agreement. Respondents cite to Hyles v. Mensing (9th Cir. 1988), 849 F.2d 1213, 1216, wherein it was stated that in order:

9

> To determine whether section 301 preempts a state tort claim, we do not look to how the complaint is cast. Rather we inquire whether "the claim can be resolved only by referring to the terms of the CBA."

It is clear that through the artful drafting of a complaint almost any breach under the collective bargaining agreement could be restated as an independent state-law tort claim. Clearly, the question of preemption must be decided on the substantive independence of the state-law claims from the collective bargaining agreement, and not from the fact that counsel was able to present the claims without reference to the collective bargaining agreement.

This Court recently reconsidered the issue of § 301 preemption in light of the Supreme Court's decision in Lingle. In Foster v. Albertsons, Inc. (Mont. 1992), Cause No. 91-346, decided July 27, 1992, this Court clarified that a state-law claim is preempted by § 301 only where its resolution requires construing the collective bargaining agreement. In the present case a decision on the merits of appellant's claims may be made by the trier of fact without reference to or interpretation of the collective bargaining agreement. The State of Montana has a substantial interest in regulating the conduct alleged in this case and such interests may be protected without interfering with the federal regulation of labor law.

On appeal, respondents raise several questions concerning the other claims appellant alleges to have asserted before the District

10

Court. Respondents contend that several of the claims raised by appellant on appeal were not included in the original complaint and that other claims included in the complaint do not state an independent tort under Montana law. Inasmuch as the District Court granted summary judgment based on federal preemption, these issues were not addressed below and are not properly before this Court at this time. The question of whether certain claims were properly pled in the complaint, or whether they may be added by amendment, as well as the question of whether in fact appellant has attempted to bring claims which do not state an independent tort under Montana law, must be decided by the District Court on remand. In light of our holding that appellant's claims are not preempted by federal labor law, the District Court's granting of summary judgment for respondents must be reversed.

Reversed and remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

11

Karla M. Gray

Jim Rieweralt

R.C. McDonough

Justices